689 P.2d 1274

Matthew **RANVILLE**,
Plaintiff-Appellant,

v.

**J.T.S. ENTERPRISES, INC.,** and The
Travelers Insurance Company,
Defendants-Appellees.

No. 7661.

Court of Appeals of New Mexico.

Sept. 27, 1984.

Catherine Gordon, Duhigg & Cronin, Albuquerque, for plaintiff-appellant.

Stephen M. Williams, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for defendants-appellees.

## OPINION

ALARID, Judge.

Matthew Ranville (plaintiff) challenges the district court's award of worker's compensation benefits of 15% disability to the body as a whole. He bases his appeal on two issues: (1) Whether he should have been compensated for the loss of a scheduled member under NMSA 1978, Section 52–1–43(A); and (2) whether he should be compensated for the loss of his eye without regard to correction. We hold that plaintiff has suffered an injury to a specific body part which is covered by the scheduled injury section, and that he should receive compensation according to the schedule. Further, we hold that compensation should be based on the damaged eye without considering the correctability of vision through the use of a contact lens. The judgment of the trial court is reversed.

## FACTS

Plaintiff received a compensable injury to his eye on November 3, 1979. After trial, the district court determined that the plaintiff was 100% disabled because he suffered from "traumatic neurosis" directly related to his eye injury. The trial court's judgment was filed on September 10, 1982. Plaintiff received compensation for total

disability from the time of the injury until June 2, 1983. On January 19, 1983, J.T.S. Enterprises, Inc., and the Travelers Insurance Company (defendants) filed a motion for termination or reduction of workman's compensation benefits. On May 11, 1983, plaintiff filed a motion stating that he was no longer disabled by "traumatic neurosis" as of April 1, 1983, and requesting benefits pursuant to Section 52–1–43(A)(41), for loss of his left eye. The trial court, in its judgment filed January 17, 1984, reduced benefits effective June 2, 1983 to an award of 15% disability to the body as a whole rather than for a scheduled injury. The trial court found that plaintiff was legally blind in the left eye without a corrective lens. It concluded that the eye could be corrected to 20/40 and that plaintiff should receive compensation on the basis of corrected vision. Plaintiff appeals from the judgment, and challenges the trial court's conclusion of law, contending that he should have been compensated for the loss of a scheduled member without regard to correction.

**DISCUSSION**

 Defendants argue that plaintiff is procedurally precluded from asserting his claims on appeal because of (1) judicial estoppel, and (2) *res judicata*. We disagree with defendants' arguments. First, as to judicial estoppel, plaintiff did not assume inconsistent positions at the first and second hearings in this case so as to prejudice defendants. This inconsistency and resulting prejudice is required for the application of judicial estoppel. *Citizens Bank v. C & H Construction & Paving Co.*, 89 N.M. 360, 552 P.2d 796 (Ct.App.1976). Second, as to *res judicata*, the issue of whether plaintiff had suffered a scheduled injury was specifically reserved at the time of the first hearing in 1982. Therefore, the issue was not fully adjudicated on the merits, and the doctrine of *res judicata* was inapplicable to preclude the resolution of that issue at the second hearing in 1983. *See Miller v. Bourdage*, 98 N.M. 801, 653 P.2d 177 (Ct.App.1982).

Plaintiff challenges the ruling of the trial court that he suffered a 15% disability to the body as a whole and asserts that he has an injury to a specific body member. The issue, of course, is whether plaintiff was entitled to workmen's compensation benefits under NMSA 1978, Section 52–1–42 or Section 52–1–43. By its terms, Section 52–1–42 applies when a workman has suffered a "partial disability ... not specifically provided for in Section 52–1–43 ...." Section 52–1–43 lists specific body members as well as the total period of time for which compensation is to be paid for loss or loss of use of the specific body members listed.

The plaintiff has suffered an injury to his left eye, which is a body part listed under the scheduled injury section of the statute. Section 52–1–43(A)(41). In addition, the trial court found at the first trial in 1982 that the plaintiff was totally disabled as a result of "traumatic neurosis." He has since recovered from this disability and is now seeking compensation based solely on the injury to his eye.

 In order for a court to award a worker benefits under the partial disability benefits section, Section 52–1–42, there must be a separate and distinct impairment to other parts of the body in addition to the disability resulting from injury to a scheduled member. *Hise Construction v. Candelaria*, 98 N.M. 759, 652 P.2d 1210 (1982); *Newhoff v. Good Housekeeping, Inc.*, 94 N.M. 621, 614 P.2d 33 (Ct.App. 1980). The plaintiff has, because he is legally blind in his injured eye, lost his eye. Since his recovery from the traumatic neurosis, he no longer suffers from an impairment "separate and distinct" from the loss of that eye and, thus, compensation should be under the scheduled injury section. Plaintiff was entitled to compensation under the scheduled injury section.

Defendants maintain, however, that even if scheduled member benefits should be awarded, plaintiff has been paid those benefits because plaintiff was paid benefits for total disability for a full two years after he was discharged by his ophthalmologist in June of 1981, and he was paid 15% disabili-

ty benefits since June of 1983. Defendants argue that plaintiff's healing period ended in June, 1981, and that under the terms of the statute, he is to be compensated for an additional 120 weeks. Section 52–1–43(A)(41) and (D). According to defendants, more than 120 weeks have elapsed since June, 1981, during which time plaintiff has been paid all, or nearly all, of the benefits provided for under the scheduled injury section. It is not disputed, however, that payments made between June, 1981 and June, 1983 were specifically for the traumatic neurosis which resulted from the eye injury.

Inasmuch as payments from June 1981 to June 1983 were for the traumatic neurosis and not for the eye injury, defendants' contention necessarily disregards the basis for the payments and considers only the fact that payments were made. The basis for the payments must also be considered. Cf. *Montoya v. Sanchez*, 79 N.M. 564, 446 P.2d 212 (1968), where plaintiff was entitled to payment for both scheduled injuries. See *American Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 565 P.2d 1030 (1977), for a possible modification of *Montoya* on other grounds.

The trial court awarded total disability payments on the basis of the traumatic neurosis. Up until June 1981 plaintiff was undergoing a healing period for the eye injury, and during that healing period he was entitled to compensation for total disability. Section 52–1–43(A) and (D). Although entitled to total disability payments on two separate grounds, this entitlement existed during the same time period, and payments were limited to that for one total disability. *Rollins v. Albuquerque Public Schools*, 92 N.M. 795, 595 P.2d 765 (Ct.App. 1979).

After June 1981, the total disability for the traumatic neurosis continued until June 2, 1983. Because, factually, the payments during this time period were not for the eye loss, defendants' claim that the payments for traumatic neurosis are also to be considered as payments for the eye loss becomes a question of statutory interpretation. Defendants do not cite any statutory provision in support of their position. Section 52–1–47 states limitations on compensation benefits. Section 52–1–47(A) and (B) limits compensation for a combination of disabilities to 600 weeks and a monetary amount determined by multiplying the maximum weekly benefit by 600. Defendants do not claim that the limitations of Section 52–1–47(A) and (B) apply. Inasmuch as the statute states limitations for combinations of disabilities, if the statutory limitations do not apply, payment for the combination is authorized. We have no authority to make changes in the provisions of statute law. *Sanchez v. Bernalillo County*, 57 N.M. 217, 257 P.2d 909 (1953).

Once the payment for traumatic neurosis ended, payment should have been ordered for the eye loss for an additional 120 weeks, beginning June 2, 1983. Upon remand, payments made pursuant to the erroneous 15% partial disability award are to be credited against the amount owed by defendants for the eye loss.

We next consider the question of whether that compensation should be based on corrected or uncorrected vision. New Mexico courts have not decided the question of whether compensation under the scheduled injury section should be computed by considering the degree to which the injured body part's function can be enhanced by the use of corrective or prosthetic devices. Several other jurisdictions, however, have decided this issue, and the majority hold that the loss of use should be judged on the basis of uncorrected vision or hearing. *Gulf Stevedore Corp. v. Hollis*, 427 F.2d 160 (5th Cir.1970); *Cannizzaro v. Great American Insurance Co.*, 223 So.2d 704 (La.App.1969); *Hollman v. City of Raleigh Public Utilities Department*, 273 N.C. 240, 159 S.E.2d 874 (1968); *Contra Wasson v. Northeast Motor Co.*, 253 A.2d 349 (Me. 1969).

In *Sessing v. Yates Drilling Co.*, 74 N.M. 550, 395 P.2d 824 (1964), our supreme court confronted a situation involving loss of vision where, although the workman's

uncorrected vision was the same after the injury as before, the vision could only be corrected to 20/30 after the injury. Before the injury, it was correctable to 20/20. The court held that a compensable injury had been suffered, represented by the differences in the corrected vision before and after the injury. Although the *Sessing* court expressly reserved ruling on whether corrected or uncorrected vision should be used to determine the benefits recoverable, in dicta the court suggested that, because the scheduled member section did not expressly state that loss of use was to be determined based upon the use of corrective or prosthetic devices, an uncorrected basis would be more appropriate in determining disability. The court did not want to be understood as inferring in its conclusion that compensation was not payable when there was an eye injury which could be corrected with glasses. 74 N.M. at 553, 395 P.2d 824.

The purpose of Section 52–1–43 is to compensate for specific loss, and there is nothing in the statute to indicate legislative intent to reduce compensation for correction. While it is true that some jurisdictions provide for using corrected vision in determining the extent of an injury to the eye, it is equally true that New Mexico, at the time of *Sessing* and at present, has not chosen to impose a similar requirement. *See* Ind.Code Ann. § 22–3–3–10(a)(3), (b)(4) (Burns 1984). The New Mexico Legislature could have provided, as Indiana did, that the determination of blindness is to be made with glasses. It did not. The Legislature has not required that eye loss be determined on the basis of corrected vision and we have no authority to impose such a requirement. *Selgado v. New Mexico State Highway Department,* 66 N.M. 369,

348 P.2d 487 (1960); *Sanchez v. Bernalillo County; Lent v. Employment Security Commission of State of New Mexico,* 99 N.M. 407, 658 P.2d 1134 (Ct.App.1982).

█ We follow the majority rule because of the suggestion of the court in *Sessing,* and because we lack authority to add correction requirement to the statute.

Because plaintiff suffered an injury which comes within the scheduled injury section, and not within Section 52–1–42, and because the extent of an eye injury is to be decided without regard to correction, the judgment of the trial court is reversed. This cause is remanded to the district court to set aside its original judgment and to enter a new judgment consistent with this opinion. Plaintiff is awarded $2,500 for the services of his attorney in connection with the appeal. NMSA 1978, § 52–1–54(D). This being an appeal by the worker, no costs have been assessed. The appeal having been successful, defendants are to pay the $20 docket fee to the Clerk of the Court of Appeals, and are to pay to the Clerk of the District Court $46.75 for the cost of the record, and any charges of that Clerk for duplication of tapes. *Gantt v. L & G Air Conditioning,* 101 N.M. 208, 680 P.2d 348 (Ct.App.1983); *Ryan v. Bruenger M. Trucking,* 100 N.M. 15, 665 P.2d 277 (Ct. App.1983).

IT IS SO ORDERED.

WOOD and HENDLEY, JJ., concur.