756 P.2d 1

Stella BELTRAN, Plaintiff–Appellee,

v.

VAN ARK CARE CENTER a/k/a Challenge Ministries, Employer, and Liberty Mutual Insurance Company, and Northwestern National Insurance Company, Insurers, Defendants–Appellants.

No. 10139.

Court of Appeals of New Mexico.

May 5, 1988.

Joseph David Camacho, Clara Ann Bowler, Albuquerque, for plaintiff-appellee.

Charles E. Stuckey, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellants Van Ark Care Center and Liberty Mut. Ins. Co.

David N. Whitham, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellants Van Ark Care Center and Northwestern Nat. Ins. Co.

OPINION

DONNELLY, Chief Judge.

Liberty Mutual Insurance Company (Liberty) and Van Ark Care Center (Van Ark)

appeal from a judgment of the district court in a worker's compensation case which adjudicated liability for disability resulting from two separate injuries sustained by plaintiff. Liberty and Van Ark raise four claims of error on appeal: (1) whether the trial court erred in awarding partial permanent disability benefits of 75% and apportioning the award equally between the two compensation carriers; (2) whether the disability award as to plaintiff's knee injury should have been apportioned between the two compensation insurers; (3) whether future medical expenses for treatment of plaintiff's knee injury should have been awarded; and (4) whether attorney fees and costs were correctly apportioned between the two compensation carriers. We discuss the first two issues jointly. We affirm in part and reverse in part.

The plaintiff, Stella Beltran, sustained two separate unrelated accidental injuries during her employment as a nurse's aid with Van Ark in Tucumcari, New Mexico. She injured her right knee on May 31, 1983 while lifting a patient. On July 22, 1984, she injured her right shoulder while working for the same employer. At the time of the first accident and until April 26, 1984, Liberty was the employer's compensation insurer. From April 26, 1984 until April 26, 1985, the employer's compensation insurer was Northwestern National Insurance Company (Northwestern).

The trial court found that as a result of the combination of plaintiff's injuries, she suffered from a continuing 75% partial permanent disability to the body as a whole. Liability for payment of worker's compensation benefits for the disability was equally apportioned between Liberty and Northwestern. Liberty was also directed to pay any past, present and future medical expenses related to the treatment of plaintiff's right knee, and Northwestern was directed to pay all medical expenses related to the treatment of plaintiff's shoulder injury. Additionally, the trial court ordered that plaintiff's attorney fees be paid equally by Liberty and Northwestern.

## I. AWARD OF WORKER'S COMPENSATION BENEFITS

### A. *Apportionment of Award*

■ Liberty contends that the trial court erred in awarding partial disability benefits of 75% and equally apportioning the award between it and Northwestern. Liberty asserts that there is no basis for apportioning disability when the injuries are unrelated; instead, the trial court must separately determine the disability resulting from each injury, thus holding each insurer liable only for the percentage of disability that occurred during each insurer's respective period of compensation coverage. We agree.

In *Gonzales v. Stanke–Brown & Associates, Inc.*, 98 N.M. 379, 648 P.2d 1192 (Ct. App.1982), this court addressed the issue of the respective liability of successive insurance carriers for disability resulting from separate accidental injuries that occurred while claimant was working for the same employer. In *Gonzales*, we recognized that an employee could recover to the full extent of a combined disability, even though the disability was attributable to two separate work-related injuries. Where two unrelated disabling injuries, such as an injury to an arm and an injury to a leg, were found, "a separate disability [must] be determined for each accidental injury and the employer and compensation carrier at the time of each accident would be liable for disability resulting from that accident." *Id.* at 385, 648 P.2d at 1198 (citing *Reynolds v. Ruidoso Racing Ass'n, Inc.*, 69 N.M. 248, 365 P.2d 671 (1961)). As a prerequisite to recovery for the combined effect of the injuries, however, we held that a causal connection or relation between the injuries must be established. The same rationale applies herein.

Plaintiff responds that her injuries and resulting disability are related because they both occurred on the job while she was working for the same employer. We disagree. *Gonzales* requires that there be a *causal* connection between both injuries, whereby the prior injury is a contributing factor to the later injury or involves the same body part which was previously injured. A causal connection was established

in *Gonzales* where both injuries were to the same area of the plaintiff's back. *See Reynolds v. Ruidoso Racing Ass'n, Inc.* (causal connection between an accidental injury to the claimant's back and a prior existing condition of osteoporosis established when the accidental injury would not have occurred absent a preexisting condition of osteoporosis).

The record here contains no evidence establishing a causal connection between plaintiff's knee and subsequent shoulder injuries. Therefore, the trial court erred in determining a combined disability and apportioning liability between the compensation insurers. *See Gonzales v. Stanke–Brown & Assoc., Inc.* Under the circumstances presented in this case, the trial court must determine a separate disability for each accidental injury and assign liability for payment of compensation for each disability to the compensation insurer at the time of the accident. Accordingly, we remand to the trial court for the adoption of specific findings and conclusions as to this issue.

B. *Award of Partial Disability Benefits*

■ Liberty argues that the trial court erred in awarding benefits under the partial disability benefits section of the Workmen's Compensation Act (Act) because plaintiff suffered a scheduled injury such that recovery is limited to the benefits set out in the scheduled injury section of the Act. *See* NMSA 1978, §§ 52–1–42 to –43 (Orig.Pamp.). In order to obtain partial disability benefits and not be limited to scheduled injury benefits, plaintiff must establish a separate and distinct impairment to other body parts in addition to the injury to her knee. *See Ranville v. J.T. Enters., Inc.,* 101 N.M. 803, 689 P.2d 1274 (Ct.App. 1984). The separate and distinct injury necessary to remove a plaintiff from the scheduled injury section must result from

or be attributable to the accident or injury to the scheduled member. *See Hise Constr. v. Candelaria,* 98 N.M. 759, 652 P.2d 1210 (1982), *overruled on other grounds, Garcia v. Schneider, Inc.,* 105 N.M. 234, 731 P.2d 377 (Ct.App.1986).

The question of whether a separate and distinct impairment exists is one for the fact finder to determine. *Reck v. Robert E. McKee Gen. Contractors,* 59 N.M. 492, 287 P.2d 61 (1955). Accordingly, we remand to the trial court to make this determination.

C. *Apportionment of Plaintiff's Knee Injury*

Liberty argues that liability for payment of compensation benefits for plaintiff's knee injury should have been apportioned between the two compensation insurers. Specifically, Liberty asserts that at least a portion of plaintiff's knee disability resulted from aggravation of her injury by her continued employment after Liberty's compensation coverage terminated. In support of this contention Liberty relies on testimony elicited from plaintiff's treating physician, Dr. Samuel Tabet. Liberty asserts the testimony of Dr. Tabet is uncontradicted as to this issue.

■ Liberty's contention that Dr. Tabet's testimony is uncontroverted is not supported by the record. Dr. Tabet's testimony on the issue of aggravation of the knee injury was at best equivocal. Dr. Tabet testified, in part, that there was "a good medical probability" that plaintiff's knee injury was aggravated by her work activity subsequent to the time Liberty ceased to provide compensation insurance coverage. Dr. Tabet also testified it would be speculative to say whether any particular activity, other than the injury in May 1983, brought her to the point where she required knee surgery. The uncontradicted medical evidence rule[1] has no applica-

---

1. The rule is an exception to the general rule that a trial court can accept or reject expert medical opinion. *Hernandez v. Mead Foods, Inc.* This rule states that where medical opinion based on the facts has been expressed and is uncontradicted, the evidence is conclusive upon the court as trier of fact. *Ross v. Sayers Well Servicing Co.,* 76 N.M. 321, 414 P.2d 679 (1966). The rule is based on NMSA 1978, Section 52–1–28(B) (Repl.Pamp.1987), which requires that the claimant prove a causal connection between the

tion where the testimony claimed to be uncontroverted is equivocal, contradicted, or subject to reasonable doubt. *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 716 P.2d 645 (Ct.App.1986), *limited by Graham v. Presbyterian Hosp., Center*, 104 N.M. 490, 723 P.2d 259 (Ct.App.1986). Where evidence is equivocal or subject to reasonable doubt, it is for the fact finder to reconcile or determine its proper weight. *See Montano v. Saavedra*, 70 N.M. 332, 373 P.2d 824 (1962).

In reviewing the findings of fact in worker's compensation proceedings, we view the evidence in the light most favorable to support the trial court's findings, *See Mirabal v. Robert E. McKee, Gen. Contractor, Inc.*, 77 N.M. 213, 421 P.2d 127 (1966), and disregard all evidence unfavorable to that finding. *Marez v. Kerr–McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204 (Ct.App. 1978). The trial court's findings will not be disturbed if supported by substantial evidence. *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Schober v. Mountain Bell Tel.*, 96 N.M. 376, 630 P.2d 1231 (Ct.App.1980). Absent either misapplication of the law or substantial evidence, an appellate court will not reweigh the evidence or substitute its judgment for that of the fact finder. *See Ideal Basic Indus., Inc. v. Evans*, 91 N.M. 460, 575 P.2d 1345 (1978).

■ We determine that the trial court's finding that plaintiff's disability is a natural and direct result of the May 31, 1983 and July 22, 1984 accidents, is supported by substantial evidence and does not constitute error. Dr. Tabet testified it was within the realm of medical probability that plaintiff's knee condition, as diagnosed in October 1984, was a natural and direct result of the May 1983 injury.

## II. AWARD OF FUTURE MEDICAL EXPENSES

■ The final judgment directed that Liberty would be responsible for medical

disability and the accident as a medical proba-

expenses related to the treatment of plaintiff's right knee, and that Northwestern would be responsible for medical expenses related to the treatment of plaintiff's right shoulder. Liberty challenges the trial court's award of future medical expenses arguing that they result from the aggravation to the knee due to her return to work. Liberty also asserts that plaintiff must prove the medical expenses are related to the injury and are reasonable and necessary.

In *Graham v. Presbyterian Hospital Center*, 104 N.M. at 491, 723 P.2d at 260, this court held that "[o]nce a compensable injury is found, the Workmen's Compensation Act grants, as a substantive right, necessary and reasonable future medical treatment to the injured worker. The trial court is without authority to limit or restrict in advance future medical benefits once a compensable injury has been established." (Citations omitted.) The applicable standard of review as to whether an award of future medical benefits should be granted is substantial evidence. *See id.*

Under the facts presented in this case, we find the trial court's award of future medical expenses to be reasonable and proper. Dr. Tabet's testimony established the permanent nature of plaintiff's knee injury. He noted that her condition could progressively worsen and stated that further surgery may well be a possibility for the future. Thus, the trial court's award of future medical expenses against Liberty was supported by the evidence and should be affirmed.

## III. APPORTIONMENT OF ATTORNEY FEES

■ Liberty contends the trial court erred in equally apportioning liability for payment of plaintiff's attorney fees between Northwestern and itself. In *Gonzales v. Stanke-Brown & Associates, Inc.*, 98 N.M. at 387, 648 P.2d at 1200, this court held that "[a]pportionment of attorney fees and costs on the basis of the liability of each insurance company to pay compensa-

bility by expert medical testimony.

tion benefits accords with the concept of fundamental fairness...." Plaintiff and Northwestern contend that Liberty waived this issue by failing to submit requested findings of fact and conclusions of law relating to the award of attorney fees. We disagree. Because the case must be remanded for adoption of additional findings and entry of an amended judgment specifically apportioning liability between Liberty and Northwestern, and because the two issues are interrelated, fundamental fairness requires that payment of attorney fees be apportioned to reflect the liability of each insurance company for compensation benefits. *See Gonzales v. Stanke-Brown & Assocs., Inc.*

## CONCLUSION

That portion of the final judgment awarding partial disability benefits, equally apportioning liability for payment of compensation benefits between the insurers, and awarding attorney fees is reversed. We remand with instructions that the trial court adopt specific findings of fact and conclusions of law and enter an amended judgment which: (1) determines whether a separate and distinct impairment exists and whether there is a separate disability re-sulting from each accidental injury; and (2) redetermines the appropriate proportional award of attorney fees. The remainder of the final judgment is affirmed.

Plaintiff has successfully defended on appeal the trial court's award of future medical expenses. Under these circumstances, an award of appellate attorney fees is appropriate. *See Graham v. Presbyterian Hosp. Center; Willcox v. United Nuclear Homestake Sapin Co.,* 83 N.M. 73, 488 P.2d 123 (Ct.App.1971). Appellate attorney fees of $750 are awarded to plaintiff.

On remand, we also direct the trial court's attention to a discrepancy between the final judgment filed July 10, 1987 and the judgment filed December 5, 1986, in paragraphs 8 and 9 thereof.

IT IS SO ORDERED.

GARCIA and FRUMAN, JJ., concur.