882 P.2d 40

Mary Lou **GOMEZ,** Claimant–Appellant,

v.

**BERNALILLO COUNTY CLERK'S OFFICE and New Mexico County Insurance Authority, Respondents–Appellees.**

No. 14457.

Court of Appeals of New Mexico.

July 28, 1994.

Gerald A. Hanrahan, Albuquerque, for claimant-appellant.

Thomas L. Kalm, Albuquerque, for respondent-appellee Bernalillo County Clerk's Office.

*OPINION*

ALARID, Judge.

Mary Lou Gomez ("Worker") appeals the Workers' Compensation Judge's ("WCJ") compensation order which: (1) denied Worker benefits arising out of a non-work-related injury to her shoulder that resulted from a fall at home; (2) awarded scheduled injury benefits for Worker's work-related injury to her left wrist and right elbow; (3) granted the Bernalillo County Clerk's Office ("Employer") a credit for compensation benefits, paid at an accelerated rate per week after Worker's date of maximum medical improvement on January 3, 1992; and (4) denied Worker's claim for attorney fees. We affirm the WCJ's compensation order on the first three issues and reverse on the issue of attorney fees for the reasons discussed below.

DISCUSSION

 We review Worker's challenge to the sufficiency of the evidence under the whole record standard of review. *See Herman v. Miners' Hosp.,* 111 N.M. 550, 552, 807 P.2d 734, 736 (1991); *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 127–28, 767 P.2d 363, 366–67 (Ct.App.), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988). The reviewing court will not substitute its judgment for that of the WCJ, and the WCJ's findings will not be disturbed so long as they are supported by substantial evidence on the record as a whole. *Tallman,* 108 N.M. at 129, 767 P.2d at 368. The WCJ found, and the parties agree, that Worker's claim is governed by the Workers' Compensation Act, NMSA 1978, Sections 52–1–1 to –70 (Repl. Pamp.1991) (the "1991 Act").

I. The WCJ's Denial of Benefits for Worker's Shoulder Injury as a Result of a Fall at Home is Supported by Substantial Evidence on the Record as a Whole.

The WCJ found that Worker sustained an accident on March 19, 1991 (the "March 19 accident"), arising out of and in the course and scope of her employment with Employer. Worker was injured when she tripped over a telephone cord and fell down, fracturing her left wrist and shattering her right elbow. The WCJ determined that Worker suffered

permanent impairment to the right elbow of 13% and to the left wrist of 9% and that the injuries were, to a reasonable medical probability, a result of the accident. The WCJ found that the shoulder injury Worker sustained on June 25, 1991 (the "June 25 fall"), at home in the bathroom while drying off after a shower when she fell back against the wall, was not in the course and scope of Worker's employment with Employer, did not arise out of her employment with Employer, and was not a natural and direct result of the March 19 accident at work. The WCJ also found that the risk of the June 25 fall was not incident to Worker's employment and that Worker's permanent impairment to the right shoulder of 12% was caused by the June 25 fall at home, which was not causally related to the March 19 accident at work.

Worker argues that she sustained her subsequent non-work-related injury on June 25, 1991, because: (1) her arms were disabled from her prior compensable injury and could not be used to prevent her fall; and (2) her shoulder was rendered weaker due to inactivity (osteopenic) and more susceptible to injury by her prior work injury. Moreover, Worker argues, the opinion of the medical expert, Dr. Anthony Pachelli, was uncontradicted and binding on the trier of fact in this regard. Employer argues the WCJ's finding that the June 25 fall was not a direct and natural result of the prior work-related injury is supported by substantial evidence in this case and that the uncontradicted medical evidence rule does not require that the fall at home be found to be a compensable event in this case.

■ We are not persuaded that the numerous out-of-state cases cited by Worker are applicable to our analysis of this case given this Court's recent detailed discussion of the relevant parameters of the issue of causation under the pertinent New Mexico statutes in *Aragon v. State Corrections Department*, 113 N.M. 176, 178, 824 P.2d 316, 318 (Ct.App.), *cert. quashed*, 113 N.M. 23, 821 P.2d 1060 (1991). In *Aragon*, this Court interpreted two sections of the New Mexico Workers' Compensation Act, Sections 52–1–9(C) and –28(B), which remain unchanged under the 1991 Act. These two sections deal with the causal relationship that must be established between an accident and a disability for a worker to recover benefits. As discussed in *Aragon*, Section 52–1–9(C) requires that the injury be "proximately caused" by an accident arising out and in the course of employment. *Aragon*, 113 N.M. at 178, 824 P.2d at 318. Section 52–1–28(B) supplements the proximate cause requirement with a " 'natural and direct result' " requirement, meaning "a result that occurs in the natural course of life without intervening events." *Aragon*, 113 N.M. at 179, 824 P.2d at 319. As stated in *Aragon*, Worker in this case could not establish her "entitlement to benefits simply by showing that [her] present disability was a consequence of aggravation" of the March 19 injury. *See id.* at 181, 824 P.2d at 321. Nor could Worker establish her "entitlement to benefits solely by showing that the [March 19] injury contribute[d] to [her] present disability." *See id.* (footnote omitted). To recover benefits, Worker needed to convince the WCJ that her shoulder injury was a direct and natural result of the March 19 injury—that is, a disability that arose from a combination of her March 19 injury and the "normal physical strains of daily life." *See id.*

■ In this case, the WCJ rejected Worker's proposed conclusion that the June 25 fall was a natural and direct result of the March 19 accident. On the record before us it was rational for the WCJ to do so. When a finding is made against the party bearing the burden of persuasion, the reviewing court will affirm if the fact finder acted rationally. *See Sosa v. Empire Roofing Co.*, 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App.1990).

Worker stepped out of the shower in her bathroom at home onto a fully carpeted floor, lost her balance or became dizzy when she straightened up after wiping the bottom of her feet, and fell back against the bathroom wall, fracturing her right shoulder. As the cause of the fall, Employer points to Worker's prior history of dizziness, hypertension, and high blood pressure, and a prior foot pain problem in Worker's medical records, which Worker failed to disclose in interroga-

tories and, with regard specifically to dizziness, in her deposition.

■ Dr. Pachelli testified that "[t]he fall itself, the event of falling down was probably not related to the initial injury at work[.]" Dr. Pachelli made a medical note and testified at his deposition that Worker's shoulder was osteopenic since the elbow fracture, and that "common sense" told him that the elbow fracture would affect Worker's mechanics of saving herself from falling. Dr. Pachelli also testified, however, that Worker's weakened bone condition was preexisting, and that, in general, Worker's injuries were more serious than normal because of her age, long-term sedentary employment, osteoporosis, and weight. Dr. Pachelli further testified that the shoulder injury could have occurred from a fall in the bathroom without the wrist and elbow fractures. The WCJ could reasonably have determined that Dr. Pachelli's testimony was ambiguous and equivocal so that the *"uncontradicted medical evidence rule"* did not apply to Worker's claim of causation in this case. *See Nunez v. Smith's Management Corp.*, 108 N.M. 186, 189, 769 P.2d 99, 102 (Ct.App.1988) ("The uncontradicted medical evidence rule does not apply to ... ambiguous testimony."); *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 70–71, 716 P.2d 645, 648–49 (Ct.App.1986) (uncontradicted medical evidence rule does not apply to testimony that is equivocal or contains inherent improbabilities). Where the medical testimony is equivocal or subject to reasonable doubt, it is for the fact finder to reconcile or determine its proper weight. *See Beltran v. Van Ark Care Ctr.*, 107 N.M. 273, 276, 756 P.2d 1, 4 (Ct.App.1988). We agree with the WCJ that the risk of falling in the bathroom at home, as opposed to tripping over a telephone cord at work, is not a risk which is incident to Worker's employment. Nor is Worker "provided an insurance policy of indefinite duration to cover every non-work-related accident that magnifies the original injury." *Aragon*, 113 N.M. at 179, 824 P.2d at 319. The injury to Worker's shoulder was not an aggravation of the injuries to the wrist and elbow. *Cf. Aragon*, 113 N.M. at 179–80, 824 P.2d at 319–20 (worker may recover for the aggravation of a work-related injury by

the normal physical stresses of everyday life).

Given the facts of this case, the testimony of the witnesses, and the law in New Mexico on this issue, it clearly was rational for the WCJ to conclude that Worker's shoulder injury, which arose out of a fall in the bathroom at home, was not a "direct and natural result" of Worker's March 19 accident at work. Since Worker failed to establish the causal relationship between the March 19 accident and her shoulder injury which occurred as a result of the June 25 fall, the WCJ's denial of benefits for Worker's shoulder injury is affirmed.

II. Worker Was Entitled to Scheduled Injury Benefits Under Section 52–1–43 Rather Than Permanent Partial Disability Benefits Under Section 52–1–42.

The WCJ awarded Worker scheduled injury benefits under Section 52–1–43(B) from her date of maximum medical improvement on January 3, 1992, for Worker's work-related injury to nondexterous member left wrist at 9% impairment rating for 140 weeks, and dexterous member right elbow at 13% impairment rating for 160 weeks under Section 52–1–43(A)(6), (2). Worker argues that because she sustained injury to at least two separate and distinct parts of her body, she is entitled to an award of permanent partial disability benefits under Section 52–1–42. Worker also argues that an award of nonscheduled benefits is appropriate because Worker is partially disabled and "cannot write, hold a phone, lift over 10 pounds, or even eat without difficulty and she is in constant pain[,]" entitling Worker to "at least the 13% whole body impairment attributable for the combined left and right upper extremity impairments." Finally, Worker argues that scheduled injury Section 52–1–43(B) limits its application to "one" or "a" injury and that 1C Arthur Larson, *The Law of Workmen's Compensation* Section 58.23 (1993) has recognized "the trend is away from limiting benefits to scheduled injury."

Employer first argues that Section 52–1–26(D) (Effective January 1, 1991) applies to Worker's case because Worker returned to work at maximum medical improvement,

earning the same or a larger weekly wage. Next, Employer argues that the language of scheduled injury Section 52-1-43 deals with the maximum and minimum compensation for injury to "specific body members." Finally, Employer argues that case law holding that a scheduled injury compounded by another scheduled injury resulting in total disability does not apply to Worker, "who returned to work full time and then retired," nor does such case law apply in a situation where both of Worker's injuries to the left and right members "occurred at the same time."

**■■■** We are not persuaded that Worker is entitled to permanent partial disability for the maximum number of weeks under Section 52-1-42 (Effective January 1, 1991), rather than scheduled injury benefits under Section 52-1-43(B). First, Worker's argument that the scheduled injury section only applies for injuries to one member is without merit given the wording of the title of Section 52-1-43 which refers to "injury to specific body members." Second, the case law in New Mexico has held that the scheduled injury section does not apply (a) to injury to members where total disability results, or (b) to situations where the worker establishes a separate and distinct impairment to other body parts in addition to the scheduled injury. *Hise Constr. v. Candelaria*, 98 N.M. 759, 760-61, 652 P.2d 1210, 1211-12 (1982); *Beltran*, 107 N.M. at 275, 756 P.2d at 3.

**■■■** In this case the WCJ could reasonably find that Worker was not totally disabled. Worker returned to work full time at her pre-injury salary, obtained a raise, retired, and subsequently found employment in the private sector as a real estate search consultant. Worker did not establish a separate and distinct impairment to other body parts in addition to her scheduled injuries. The WCJ, therefore, correctly determined that Worker did not suffer a separate and distinct injury to a body part not appearing in Section 52-1-43(A). The question of whether a separate and distinct impairment exists is one for the fact finder to determine. *Beltran*, 107 N.M. at 275, 756 P.2d at 3. We have already held that the WCJ correctly determined that Worker was not entitled to

benefits for the injury arising out of Worker's June 25 fall.

**■■■** Worker suffered some tendinitis in her right shoulder after the March 19 accident at work and before the June 25 fall at home. In his deposition, however, Dr. Pachelli stated that he could not say that the 12% impairment he assigned to the right shoulder injury resulting from the June 25 fall included a percentage impairment relating to tendinitis. Dr. Pachelli speculated that the tendinitis may have cleared up without any resulting permanent impairment. Employer speculates the tendinitis was from the physical therapy. In any case, when Employer's insurance adjuster asked Dr. Pachelli to determine Worker's impairment rating disregarding the shoulder injury, Dr. Pachelli totally removed the 12% impairment he had assigned to the right shoulder, leaving the preexisting determinations of 13% for the right elbow and 9% for the left wrist, and reduced the whole body rating accordingly. It was reasonable for the WCJ to conclude, therefore, that Worker did not suffer a separate and distinct impairment to other body parts in addition to her scheduled injuries, or that any separate causally related impairment resulted from, or is attributable to, those injuries. *Cf. Ranville v. J.T.S. Enters.*, 101 N.M. 803, 805, 689 P.2d 1274, 1276 (Ct. App.1984) (after recovery from traumatic neurosis worker only entitled to compensation for scheduled injury). Accordingly, the WCJ's award of scheduled injury benefits at 13% impairment rating for 160 weeks for the dexterous right elbow and at 9% impairment rating for 140 weeks for the nondexterous left wrist pursuant to Section 52-1-43(B), is affirmed.

III. **The WCJ Correctly Granted Employer a Credit for Scheduled Injury Benefits Paid at an Accelerated Rate Per Week.**

**■■■** The WCJ concluded that Worker had been paid compensation benefits from her date of maximum medical improvement to the date of trial on an accelerated schedule and that Employer was entitled to a credit without discount for advance payments made to Worker. Worker argues that Employer is not entitled to a credit for overpayment of

benefits after Worker reached her date of maximum medical improvement because Employer was not discharging its statutory obligation. Worker asserts that Employer unilaterally elected to issue lump sum benefits without the approval of the WCJ, which is prohibited by NMSA 1978, Section 52–5–12 (Repl.Pamp.1991) (Effective January 1, 1991). We do not address the other arguments Worker made below which Worker did not brief on appeal. Issues not briefed will not be reviewed by this Court. *City of Santa Fe v. Komis,* 114 N.M. 659, 665, 845 P.2d 753, 759 (1992).

Employer argues that the accelerated benefits were periodic payments rather than lump sum payments, that they were made by Employer in the good faith discharge of its statutory obligation, accepted by Worker when she cashed the checks while represented by counsel, and that Worker benefitted or was not harmed by receiving the money in advance, without discount.

In *Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 777, 689 P.2d 289, 293 (Ct.App.1984), this Court held that "a credit is appropriate for overpayments made under the employer's good faith belief that he is discharging his statutory obligation." Employer's insurance adjuster testified at trial that the policy of the insurance company was to accelerate payments in order to cut down on the number of checks Employer must process and because it is generally beneficial for a worker to receive the money faster. Worker did not object to the acceleration and cashed the checks while represented by counsel. Moreover, accelerated periodic payments are not lump sum settlements requiring pre-approval by the WCJ under Section 52–5–12 (Effective January 1, 1991). In *Paternoster,* this Court stated: "We agree with the policy of encouraging voluntary, prejudgment payments. The employer, in so making these payments, furthers the prime goal of the Act, which is to protect an employee against want, and to prevent an employee from becoming a public charge." *Id.* There is no evidence that accelerated periodic payments worked a hardship on Worker in this case. We agree with Employer that the record as a whole provides substantial evidence to support the WCJ's findings and conclusions on this issue. Accordingly, we affirm the WCJ's determination that Employer was entitled to a credit without discount for advance periodic payments made to Worker.

### IV. Worker was Entitled to an Award of Attorney Fees.

The WCJ determined that Worker was not entitled to an award of attorney fees because Employer had "voluntarily paid all benefits to which the Worker is entitled under the facts of this case." Worker argues that Employer made no written offer pursuant to Section 52–1–54(E) (effective January 1, 1991), but indicated a willingness to issue scheduled injury benefits at 21% of Worker's maximum compensation rate for 140 weeks, totalling $8,464.84, and that this is $1,151.69 less that the amount awarded by the WCJ at 13% for 160 weeks and 9% for 140 weeks totalling $9,616.53. Worker also argues that Employer placed all past benefits in jeopardy by not stipulating that Worker's injuries arising out of the March 19 accident at work were compensable until trial commenced, and that Worker is, therefore, entitled to attorney fees for the services of her attorney in preserving all benefits. Employer argues that an award of attorney fees is only allowed in a situation where benefits were obtained as a result of the attorney's efforts, were not forthcoming, or have been terminated. Employer also asserts that the litigation concerned the June 25 fall.

Section 52–1–54(E) (Effective January 1, 1991) provides, in part:

In all cases where compensation to which any person is entitled under the provisions of the Workers' Compensation Act is refused and the claimant thereafter collects compensation through proceedings before the workers' compensation administration or courts in an amount in excess of the amount offered in writing by an employer five business days or more prior to the informal hearing before the administration, then the compensation to be paid the attorney for the claimant shall be fixed by the workers' compensation judge hearing the claim or the courts upon appeal in

the amount ... deem[ed] reasonable and proper, subject to the limitation of Subsection I of this section.

In *Baca v. Highlands University*, 113 N.M. 170, 172, 824 P.2d 310, 312 (1992), the New Mexico Supreme Court considered the employer's request for credit for benefits paid, along with its denial of causation in the worker's request for admissions to be "tantamount to a refusal," because the worker was required to justify prior compensation payments as well as his entitlement to future benefits. The Court compared that case to *Paternoster*, where this Court found refusal because the employer was not paying all of the benefits to which the worker was entitled and the only offer of settlement made was substantially less than the benefits awarded to the worker after trial. *Paternoster*, 101 N.M. at 782, 689 P.2d at 298.

■ In this case, Worker was unsuccessful in obtaining compensation for the shoulder injury arising out of the June 25 fall, unsuccessful in obtaining benefits based on the maximum statutory period for the whole body impairment rating even for the two work-related injuries, and unsuccessful on the overpayment credit issue. On the other hand, Employer apparently made no written offer of settlement five or more days before trial in this case, and, as pointed out by Worker, Employer's answer included affirmative defenses which would bar all benefits by generally denying causation between the accident and the disability, and denying Worker was disabled or impaired. Moreover, Employer did not stipulate in the pretrial order that Worker's injuries arising out of the March 19 accident at work were compensable. As the trial began on November 23, 1992, Employer conceded that Worker was entitled to benefits for injuries arising out of the March 19 accident at work, but at the end of trial, in the requested findings and conclusions, Employer requested a complete dismissal with prejudice of Worker's entire claim for alleged misrepresentations.

While Employer kept making payments to Worker, its pleadings, including the pretrial order and requested findings and conclusions, required Worker to justify all prior compensation payments. Because Worker's attorney was successful in obtaining for Worker more than she would have gotten under Employer's original scheme of 21% for 140 weeks, and because Employer's litigation stance placed all benefits, even those Employer had already paid, in jeopardy, Worker was entitled to a fee award for the services of her attorney in obtaining more benefits for Worker and for preserving Worker's past benefits. *See Baca*, 113 N.M. at 172, 824 P.2d at 312. Because Employer delayed in conceding Worker's entitlement to benefits from the first accident until the morning of trial, Worker was required to prepare to prove this portion of her case. Accordingly, we find that the WCJ abused his discretion in not awarding attorney fees. *See Sanchez v. Siemens Transmission Sys.*, 112 N.M. 533, 535, 817 P.2d 726, 728 (1991) (a WCJ's determination as to attorney fees is reviewed on appeal for an abuse of discretion). We, therefore, reverse the WCJ's denial of attorney fees and remand the case to the WCJ for an evidentiary hearing and determination of a reasonable and proper amount under the circumstances in accordance with Section 52–1–54 (Effective January 1, 1991). In addition, attorney fees in the amount of $1,500 are awarded to Worker for the services of her attorney on appeal as to this issue.

CONCLUSION

For the reasons stated herein, we (1) affirm the WCJ's denial of all benefits for the injury arising out of the June 25 fall at home; (2) affirm the WCJ's award of scheduled injury benefits under Sections 52–1–26(D) (Effective January 1, 1991) and –43(B) for injuries arising out of the March 19 accident at work; and (3) affirm the WCJ's grant to Employer of a credit for scheduled injury benefits paid after Worker's date of maximum medical improvement on January 3, 1992, at an accelerated rate per week. We reverse the WCJ's denial of Worker's claim for attorney fees and remand to the WCJ for a determination of a reasonable and proper fee award pursuant to Section 52–1–54 (Effective January 1, 1991).

IT IS SO ORDERED.

DONNELLY and BLACK, JJ., concur.