This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**RUBEN GRIEGO,**

     Worker-Appellant,

v.                              **NO. 31,518**

**DYNAMIC SYSTEMS, INC., and**
**THE HARTFORD,**

     Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Gregory D. Griego, Worker's Compensation Judge**

Garcia Law Office LLC
Narciso Garcia, Jr.
Albuquerque, NM

for Appellant

Law Office of Eva K. Rappaport
Rachel A. Bayless
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**FRY, Judge.**

     Worker appeals the Workers' Compensation Judge's (WCJ) compensation order denying Worker benefits because Worker failed to carry his burden to establish

that his disability was caused by his on-the-job injury to a reasonable degree of medical probability. We affirm.

**BACKGROUND**

Because the parties are familiar with this case and because this is a memorandum opinion, we do not provide a detailed summary of the factual and procedural background. We refer to details as necessary in our discussion.

**DISCUSSION**

Worker makes two arguments on appeal. He first maintains that he satisfied his burden of establishing a causal connection between the accident on June 11, 2009, and his injuries through the testimony of a health care provider. Second, he argues that the WCJ abused his discretion in refusing to consider the documents submitted in connection with Worker's post-trial motions and in denying the motions.

**Causal Connection**

NMSA 1978, Section 52-1-28(B) (1987) provides:

> In all cases where the employer or his insurance carrier deny that an alleged disability is a natural and direct result of the accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider, as defined in [NMSA 1978,] Section 52-4-1 [(2007)], testifying within the area of his expertise.

Employer/Insurer in this case challenged the element of causation and, at trial, Worker presented the deposition testimony of his treating physician, Dr. John Sloan, to

establish causation. The WCJ ultimately determined that Worker had failed to meet his burden of proof on the issue of medical causation, and Worker claims that this determination was erroneous.

"We review [the w]orker's challenge to the sufficiency of the evidence under the whole record standard of review." *Gomez v. Bernalillo Cnty. Clerk's Office*, 118 N.M. 449, 451, 882 P.2d 40, 42 (Ct. App. 1994). We do not substitute our judgment for that of the WCJ, "and the WCJ's findings will not be disturbed so long as they are supported by substantial evidence on the record as a whole." *Id.* "When a finding is made against the party bearing the burden of persuasion, the reviewing court will affirm if the fact finder acted rationally." *Id.* at 452, 882 P.2d at 43.

It is undisputed that Worker was involved in a work-related car accident on June 11, 2009. Prior to this accident, Worker was involved in a car accident in 2005 that resulted in back and neck injuries and dizziness. He was also assaulted in April 2009, at which time he was hit on the left side of his head.

Dr. Sloan first saw Worker on October 9, 2009, four months after the work-related car accident. At this first visit, Dr. Sloan diagnosed pain in the neck, pain in the arm, and balance dysfunction. Dr. Sloan ordered x-rays, a balance test, electrodiagnostic testing of the left arm, and an MRI scan of Worker's brain. The MRI on November 30, 2009, showed "scattered white matter hyperintensities in the

frontal lobes bilaterally, more on the left than the right." These were nonspecific findings, but they "could be due to small vessel ischemic disease." The balance test showed abnormalities in the autonomic motor system and in the sensory system. Dr. Sloan also ordered a consult with an ENT physician due to the balance disturbance and an evaluation with a neuropsychologist due to Worker's complaints of feeling like he was floating and of difficulty concentrating. However, the appointments with the neuropsychologist and the ENT were not scheduled to take place until after Dr. Sloan's deposition.

Dr. Sloan next saw Worker on February 19, 2010, at which time he diagnosed Worker as "[s]tatus post two incidents in April and June, 2009 leading to possible concussions." At that visit, Worker complained about vertigo, pain in his left ear, and some back pain, but he related the back pain to "something else." At the final visit before Dr. Sloan's deposition, Worker was complaining of tinnitus. Dr. Sloan's impression was "status post concussive episode, based upon his description," and he ordered speech therapy in addition to the referrals to the ENT physician and the neuropsychologist.

In March 2010, Dr. Sloan completed a Workers' Compensation Administration (WCA) form, in which he diagnosed neck pain, "s/p head trauma, [and] vertigo." In the form, Dr. Sloan checked "Yes" in response to the question, "In your opinion, are

4

the conditions or complaints for which you have treated the Worker causally related to an on-the-job injury?"

At his later deposition, Dr. Sloan was less definite on the issue of causation. On direct examination, he reiterated the conclusion stated in the WCA form that Worker's neck pain, post head trauma, and vertigo were related to the 2009 car accident to a reasonable medical probability. But on cross-examination, Dr. Sloan stated that Worker's medical records revealed that nearly three years prior to the car accident, in September 2006, Worker had a brain MRI due to a history of dizziness. The report on that MRI contained language similar to the language in the report from the MRI ordered by Dr. Sloan after the 2009 accident. Both reports seemed to question "small vessel ischemia or a demyelinating process," but Dr. Sloan said that he would like to have one radiologist read both MRIs to explain if they are the same or if there has been a progression.

The following exchange then occurred in Dr. Sloan's deposition:

Q.    In terms of reaching a diagnosis, wouldn't it be important to make that comparison [between the 2006 MRI and the November 2009 MRI]?

A.    Yes.

Q.    We could be dealing with not a traumatic event, but maybe a disease process, correct?

A. Well, there's certainly, I mean, evidence of some type of disease process ongoing, based on those—those studies. The question is, is he significantly different from before than after, and that's—you're right.

I mean he's not at MMI, in my judgment, because these are things that you kind of have to weigh and look at as you're going forward.

Q. Okay. Well, if it's a disease process, then it wouldn't be related to the car accident. I mean the car accident—

A. If that's—if that's correct, but that's what I'm saying, is I need to—you know, seeing that, I'd want to have probably somebody like Lowry or a radiologist like that look at both MRIs and give me that feedback.

I want the neuropsyche [sic] report, get that back, and actually get the therapy notes from Lesley, who did the balance therapy, but I don't see the report in there, and look at that and then kind of clinically correlate all those findings.

. . . .

Q. And, in fact, as we sit here, you're not even sure whether this is a traumatic event or a progressive disease event, given the September 2006 MRI. Is that fair?

A. Well, I think that the thing that's confusing is you have an assault in April, then you have a car crash in June, and then you have in the context of some radiographic evidence some pre-existent condition, so trying to put that all together—I mean I can state that it would appear to be medically related that he had increased neck pain from the car crash, that presumably there's some balance issues that are related to the car crash, although I really need to see all of this and then look at all the data and synthesize it to really give a concrete answer.

Viewed as a whole, Dr. Sloan's testimony on causation was, at best, equivocal. He stated that Worker's neck pain "would appear to be medically related" to the car accident and that "presumably" the balance issues were related. These are not opinions stated to a reasonable degree of medical probability, as required by Section 52-1-28(B). Indeed, consistent with this Court's opinion in *Bufalino v. Safeway Stores, Inc.*, Dr. Sloan's opinion of a causal link between Worker's accident and his injuries could be characterized as speculation. 98 N.M. 560, 565, 650 P.2d 844, 849 (Ct. App. 1982). In *Bufalino*, we defined "speculation" as "the act of theorizing about a matter in which evidence is not sufficient for certain knowledge." *Id.* Given Dr. Sloan's desire for one radiologist to compare the MRIs and for correlation of all test results, he apparently did not have sufficient evidence to opine about causation to a reasonable medical probability.

Worker appears to argue that the so-called "uncontradicted medical evidence rule" applies in this case. This rule provides that uncontradicted evidence that comports with the requirements of Section 52-1-28(B) is binding on the WCJ. *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 70, 716 P.2d 645, 648 (Ct. App. 1986). However, as Worker acknowledges, there are exceptions to the rule, including the circumstance where the medical witness's testimony is equivocal. *Id.* Worker maintains that Dr. Sloan's testimony was not equivocal because he expressly stated

the required causation opinion in the WCA form. He argues that Dr. Sloan's deposition testimony was nothing more than an acknowledgment that he needed additional medical information in order to determine the extent of Worker's injuries and whether any pre-existing disease process was aggravated by the car accident.

Employer/Insurer argue that we should not consider Worker's characterization of Dr. Sloan's deposition because Worker did not make a similar argument to the WCJ. As a result, Employer/Insurer maintain, Worker failed to preserve his argument. *See Brown v. Trujillo*, 2004-NMCA-040, ¶ 39, 135 N.M. 365, 88 P.3d 881 ("We do not review arguments that are raised for the first time on appeal.").

We agree with Employer/Insurer. We were unable to find any instance in the record where Worker characterized Dr. Sloan's deposition testimony as relating to the extent of Worker's injuries. Instead, Worker maintained throughout the proceedings that Dr. Sloan unequivocally stated that the injuries were causally related to the car accident.

However, even if we give Worker the benefit of the doubt, his characterization of Dr. Sloan's testimony is unavailing because the authority he relies on is not relevant. Worker relies on several New Mexico cases holding that "*[o]nce causation is established by appropriate medical evidence*, the absence of medical testimony as to the extent of disability does not bar a disability award." *Garcia v. Genuine Parts*

*Co.*, 90 N.M. 124, 127, 560 P.2d 545, 548 (Ct. App. 1977) (emphasis added); *see Smith v. City of Albuquerque*, 105 N.M. 125, 129, 729 P.2d 1379, 1385 (Ct. App. 1986) (same); *Archuleta v. Safeway Stores, Inc.*, 104 N.M. 769, 771, 727 P.2d 77, 79 (Ct. App. 1986) (explaining that Section 52-1-28(B) does not require the worker to prove disability to a reasonable medical certainty). The problem with Worker's argument is that he failed to overcome the first hurdle established by these cases—the hurdle of establishing causation. There is no need to consider the extent of disability if causation has not been established.

The WCJ's finding that Dr. Sloan's testimony "establishe[d] medical causation only as a medical possibility, not a medical probability as required by Section 52-1-28(B)" is supported by substantial evidence. When pressed to attribute Worker's injuries either to the car accident or to a pre-existing disease process, Dr. Sloan was unable to do so. He was similarly unable to state whether the car accident might have aggravated a pre-existing disease process. Worker therefore failed to meet his burden of persuasion on the issue of causation.

**Consideration of Documents Submitted Post-trial and Denial of Post-trial Motions**

When the WCJ entered the compensation order denying Worker benefits, Worker filed a motion for new trial to which he attached several recently obtained medical records. He also filed a supplement to the motion for new trial to which he

9

attached a report prepared by Dr. Farhan Taghizadeh, a motion for reconsideration, and a supplement to the motions for reconsideration and for new trial. This latter supplement purported to attach a report from Dr. Taghizadeh, a report from Dr. Sloan generated after entry of the compensation order, a bill from a neuropsychiatrist, and a letter from Worker to Dr. Sloan, but these documents are not in the record proper. Worker attempted to introduce Dr. Sloan's report at the hearing on his motions, and the WCJ accepted it as an offer of proof. The WCJ filed a memorandum opinion denying the motions for new trial and for reconsideration.

On appeal, Worker focuses on the WCJ's statement in the memorandum opinion that at trial, "there were significant gaps in the record including referrals to specialists by the treating physician. This raises an issue in this Writer's mind about whether the new material [submitted post-trial] was delayed for strategic reasons." Worker interprets this statement as the WCJ's refusal to consider the supplemental material. He maintains that this refusal and the WCJ's denial of the post-trial motions constituted an abuse of discretion.

Worker overlooks the WCJ's further statement in the memorandum opinion denying the post-trial motions that "[t]he new evidence which is proposed is not persuasive in suggesting that reconsideration or a new trial should occur." According to this statement, the WCJ in fact considered the new evidence Worker had submitted

10

and found it to be unpersuasive on the merits of the two motions at issue. Consequently, the premise underlying Worker's argument—the WCJ's refusal to consider the documents—does not exist.

To the extent that Worker is arguing that the new evidence should have changed the outcome, we are not persuaded. We review a trial court's ruling on both a motion for reconsideration and a motion for new trial for abuse of discretion. *See Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 35, 148 N.M. 627, 241 P.3d 628 (stating that we review a district court ruling on a motion to reconsider for an abuse of discretion); *see also State v. Mann*, 2002-NMSC-001, ¶ 17, 131 N.M. 459, 39 P.3d 124 (stating that ruling on a motion for a new trial is reviewed for an abuse of discretion).

None of the new evidence sheds any light on whether Worker's injuries were caused by the on-the-job accident, by some prior head injury, by an underlying disease process, or by some combination of these various etiologies. Worker attached to his motion for new trial the handwritten chart notes apparently made by the ENT physician, although the document is not clearly identified. These notes are difficult to read, but at most they reflect diagnoses of tinnitus and balance issues likely from closed head injuries/concussions. The notes do not indicate whether it was the April 2009 head injury or the car accident that caused these injuries.

Also attached to the motion for new trial were notes from Premier Balance Center and a report from a radiologist on an MRI ordered by Dr. Taghizadeh. None of these documents establish causation. The radiologist's report simply notes what was seen on the MRI without attributing the observed conditions to any cause, while the balance center notes state equivocally that "[Worker's] vertigo may be due to concussion, vertebral-basilar artery insufficiency[,] or may be cervical vertigo."

Worker supplemented his motion for new trial with a report from Dr. Taghizadeh, which stated that "[Worker's] symptoms of vertigo are likely related to repeated head trauma, though this diagnosis is a difficult one to make." At the hearing on Worker's post-trial motions, Worker submitted a report from Dr. Sloan that was generated after Dr. Sloan's deposition. In that report, Dr. Sloan simply stated the findings of the balance assessment, the ENT examination, and the neuropsychologist's assessment. The report did not add anything to Dr. Sloan's deposition testimony regarding causation. Both Dr. Taghizadeh's report and Dr. Sloan's report fall short of Section 52-1-28(B)'s requirement for medical testimony establishing causation to a reasonable degree of medical probability. In short, the WCJ did not abuse his discretion in denying Worker's post-trial motions.

**CONCLUSION**

For the foregoing reasons, we affirm the WCJ's compensation order.

12

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**