866 P.2d 396

**George Michael CURLISS,
Worker–Appellant,**

v.

**B & C AUTO PARTS and Travel-
ers Insurance Company, Em-
ployer/Insurer–Appellees.**

**No. 14443.**

Court of Appeals of New Mexico.

Nov. 2, 1993.

John R. Polk and Barbara Jarvis, Albuquerque, for Worker-appellant.

William E. Singdahlsen, Beall, Biehler & Bannerman, P.A., Bonnie M. Stepleton, Stepleton & Aakhus, P.C., Albuquerque, for Employer/Insurer-appellees.

### OPINION

FLORES, Judge.

Worker appeals the denial of his petition to set aside the March 13, 1989 Workers' Compensation lump sum settlement order pursuant to NMSA 1978, Section 52-5-9(B) (Repl. Pamp.1987). Worker relies upon the following grounds to reverse the denial of his petition to set aside the settlement order: (1) he justifiably relied upon the misrepresentations made by Insurer's agent in approving the lump sum settlement; (2) the lump sum settlement was entered into under a mutual mistake of fact; (3) the post-settlement diagnosis of injury to Worker's brain constitutes newly discovered evidence; and (4) Worker lacked the mental capacity to enter into the settlement agreement. *See* § 52-5-9(B).

■ B & C Auto Parts (Employer) and Travelers Insurance Company (Insurer) attempt to challenge the substantiality of the evidence which would support the following findings and conclusion:

13. Travelers had notice that [Worker] had a serious permanent facial disfigurement in September, [sic] 1988.

    . . . .

18. As a result of the occupational accident ... [Worker] suffered injuries to his left eye, facial bones and brain which are permanent.

19. [Worker] suffered a brain injury to a reasonable medical probability as a result of the accident of September 12, 1988.

. . . .

32. [Insurer's agent] negligently misrepresented the provisions of the New Mexico Workers' Compensation Act to [Worker].

    . . . .

5. ... [Insurer's agent] misrepresented [Worker's] entitlement to benefits under the New Mexico Workers' Compensation Act.

Employer and Insurer make their arguments by raising the sufficiency of the evidence in their answer brief rather than upon cross-appeal pursuant to SCRA 1986, 12-201(C) (Repl.1992). Even assuming arguendo that Employer and Insurer properly challenge the above findings of fact and conclusion of law under SCRA 12-201(C), they have failed to comply with the requirements of SCRA 1986, 12-213(A)(3) (Repl.1992). Employer and Insurer cited only to evidence which supports their position and failed to cite to any contrary evidence which would support affirming the decision below. *See Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 184-86, 848 P.2d 1108, 1111-13 (Ct.App. 1993). Thus, they have waived their sufficiency challenge on appeal. *Id.*

We reverse the Workers' Compensation judge's (judge) denial of Worker's petition to set aside the lump sum settlement on the basis of issue two. Therefore, we need not reach the remaining issues. In considering whether Worker should receive compensation in addition to that received for the loss of Worker's eye, the judge, on remand, should, under NMSA 1978, Section 52-1-54 (Repl.Pamp.1987), also consider an award for attorney fees.

*Facts*

A brief discussion of the facts follows. Additional facts will be included throughout the opinion as relevant to the discussion. On September 12, 1988, Worker suffered an occupational accident when he was hit in the face with a fan blade which flew off a nearby automobile engine. At the time of the injury, Worker was an employee of Employer working as an auto dismantler. As a result of the accident, Worker sustained serious injuries including the enucleation of the left

eye, permanent facial disfigurement, and permanent brain damage. Although Worker was advised by an attorney shortly after the accident not to accept a lump sum settlement offer, Worker was not represented by an attorney when he entered into the settlement agreement. Nor were the full benefits to which Worker was entitled explained to him by either the attorney at their meeting shortly after the accident or by the Insurer's agent. The only benefits which Worker was informed about were the scheduled injury for enucleation of the eye and medical benefits for two years under the direction of Dr. Dahlstrom or his referrals.

*Standard of Review*

Whether Worker has made a proper showing for modification of a compensation order pursuant to Section 52–5–9 is within the sound discretion of the judge and is not to be reversed absent a showing of abuse of discretion. *See Bustamante v. City of Las Cruces,* 114 N.M. 179, 181, 836 P.2d 98, 100 (Ct.App.), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992). On appeal, the role of this Court, in determining whether an administrative agency has abused its discretion by acting in an arbitrary and capricious manner, is to review the record to determine whether there has been unreasoned action without proper consideration and regard for the facts and circumstances. *Perkins v. Department of Human Servs.,* 106 N.M. 651, 655–56, 748 P.2d 24, 28–29 (Ct.App.1987). Furthermore, abuse of discretion in the context of workers' compensation cases is inextricably intertwined with the substantial evidence standard. *Bustamante,* 114 N.M. at 181, 836 P.2d at 100.

*Issue Two: Mistake of Fact*

Although the parties do not contest the applicability of Section 52–5–9, they each devote a significant part of their arguments to a discussion of *Mendenhall v. Vandeventer,* 61 N.M. 277, 299 P.2d 457 (1956) and *Quintana v. Motel 6, Inc.,* 102 N.M. 229, 693 P.2d 597 (Ct.App.1984), two cases which predate the 1986 enactment of Section 52–5–9. Both *Mendenhall* and *Quintana* deal with the difference between an incorrect diagnosis and an incorrect prognosis for purposes of setting aside a settlement agreement on the grounds of mutual mistake of fact. Because this Court finds guidance from these cases in interpreting mistake in the context of a workers' compensation lump sum settlement agreement, we discuss the parties' arguments regarding *Mendenhall* and *Quintana.*

Worker contends that an incorrect diagnosis or a complete failure to diagnose an injury constitutes a mutual mistake of fact which can be a sufficient basis for setting aside a settlement agreement. *Mendenhall,* 61 N.M. at 282–83, 299 P.2d at 460–61. Worker finds additional support for this contention in the distinction between a mistake as to a past or present fact which can invalidate a release and unknown or unexpected consequences of known injuries which would not be sufficient. *Quintana,* 102 N.M. at 230–31, 693 P.2d at 598–99. Worker also asserts that his functional brain injury was not diagnosed until sixteen months after the settlement. Furthermore, Worker asserts his brain injury is separate and distinct from the loss of his eye or facial disfigurement because it involves a separate part of the body. *See Ranville v. J.T.S. Enters., Inc.,* 101 N.M. 803, 805–06, 689 P.2d 1274, 1276–77 (Ct.App.1984); *see also* NMSA 1978, §§ 52–1–43, –44 (Repl. Pamp.1987).

Employer and Insurer urge this Court to affirm the decision of the judge. They contend that Worker's brain injury should be classified as either a faulty prognosis or as an unexpected consequence of the known injury to his eye. *See Mendenhall,* 61 N.M. at 282–83, 299 P.2d at 460–61; *Quintana,* 102 N.M. at 230–31, 693 P.2d at 598–99. Neither of which classification would warrant setting aside the settlement. *See Mendenhall,* 61 N.M. at 282–83, 299 P.2d at 460–61; *Quintana,* 102 N.M. at 230–31, 693 P.2d at 598–99.

We find Worker's position to be better reasoned and better supported by the facts and circumstances of this case. Worker was hospitalized at the University of New Mexico Hospital from September 12–17, 1988 where he was treated for rupture of the left eye requiring enucleation, frontal sinus fracture, and a complex nasal fracture. The hospital discharge notice contains no diagnosis of

brain damage, nor does the testimony of Dr. Dahlstrom, the specialist who treated Worker's eye injury. Moreover, Employer and Insurer fail to cite to any evidence in the record which indicates that prior to reaching the settlement agreement, Worker had been diagnosed as having a brain injury or treated for any such injury. Further, as acknowledged by Employer and Insurer, CT scans of Worker's brain taken in September 1988 and May 1991 did not reveal either trauma to the brain or evidence of inter-cranial injury.

Although the admission report at the University of New Mexico Hospital made a recommendation that Worker undergo a neurological examination, no evidence was cited nor argument presented that Worker was aware of this recommendation or that he was responsible for not having initiated such an evaluation on his own. On the contrary, Insurer hired a rehabilitation nurse to be in charge of providing medical management of Worker's case and it was she who failed to follow up on a neurological examination.

Sixteen months after the entry of the settlement order, at the request of the New Mexico Department of Vocational Rehabilitation, Worker underwent a neuropsychological exam on July 23 and 25, 1990 by clinical neuropsychologist Maryann Thompson. At that time, Worker was diagnosed as suffering from a frontal lobe brain injury resulting from the September 12, 1988 accident. Thompson attributed Worker's loss of dexterity and speed in his left hand, a disruption of Worker's problem-solving ability and cognitive flexibility as well as such post-traumatic frontal lobe deficits as severe emotional distress, depression and anxiety to the previously undiagnosed brain injury. Thompson conducted a second evaluation in January 1992 and reaffirmed her diagnosis that Worker suffered permanent injury to the frontal lobes of his brain as a result of the 1988 work-related accident. An independent evaluation in February 1991 by neurologist E. Kenneth Mladinich confirmed the diagnosis that Worker suffered from a post-traumatic head injury and frontal lobe deficits. Furthermore, Mladinich testified that an MRI should have been ordered at the time of the accident because Worker's brain damage would not necessarily have been apparent based on CT scans absent an MRI and a neurological examination.

We find persuasive the argument that Worker's brain injury is separate and distinct from the loss of his eye or any facial disfigurement he may have. *See Ranville,* 101 N.M. at 805–06, 689 P.2d at 1276–77 (worker entitled to separate disability compensation for total disability benefits until recovery two years later for traumatic neurosis as well as recovery under scheduled injury provision for the loss of his eye). In *Quintana* we held that a settlement would not be set aside where the injury, a lower back injury, was known but the precise consequences were unknown. *Quintana,* 102 N.M. at 231, 693 P.2d at 599. We stated that an incorrect diagnosis might, however, provide a basis for setting aside a settlement. *Id.* at 231, 693 P.2d at 599. The New Mexico Supreme Court in *Mendenhall* clearly distinguished between an incorrect prognosis for a known injury and a mistake as to the diagnosis of an injury. *Mendenhall,* 61 N.M. at 282–83, 299 P.2d at 460–61. In the instant case, none of the parties knew at the time of settlement that Worker had suffered brain damage as a result of the work-related accident. Therefore, unlike *Mendenhall* (known injury of a broken arm which proved to be more serious and required an additional operation than the initial prognosis indicated) and *Quintana* (known injury to the lower back involved an additional disk and required more complicated surgery than the initial prognosis projected), there was no knowledge that Worker's brain had been injured. Although the brain injury existed in its undiagnosed state at the time of the settlement, the injury was not actually diagnosed until sixteen months later once appropriate tests were conducted. Furthermore, it was Insurer who had taken control of Worker's related medical treatment and was therefore responsible for the delay in the diagnosis of the brain injury.

Worker's position is also supported by the decisions of courts in other jurisdictions which have set aside workers' compensation settlement agreements on the basis of an incorrect diagnosis that was relied upon by

both the worker and the employer or the employer's representative in deciding whether to agree to the settlement. *See LaFleur v. C.C. Pierce Co.*, 398 Mass. 254, 496 N.E.2d 827, 830–32 (1986) (workers' compensation settlement agreement could be set aside on grounds of mutual mistake if, at time of settlement, parties were mistaken as to existence of any injury); *McDonald v. Zinn Drywall*, 134 Mich.App. 270, 350 N.W.2d 864, 865–66 (1984) (workers' compensation redemption agreement could be set aside on ground of mutual mistake where, after settlement, worker diagnosed as suffering from temporal lobe epilepsy, a condition unknown to the parties at the time of settlement) (court in *McDonald* relied upon earlier Michigan Supreme Court decision (*Hall v. Strom Constr. Co.*, 368 Mich. 253, 118 N.W.2d 281, 283 (1962)) in which settlement agreement was set aside on basis of mutual mistake where head injury, viewed by parties at time of settlement as a mere "temporary annoyance," was later correctly diagnosed as permanent brain injury causing epilepsy); *Weldele v. Medley Dev.*, 227 Mont. 257, 738 P.2d 1281, 1282–83 (1987) (workers' compensation settlement agreement could be set aside on basis of mutual mistake where, at time of settlement, parties believed injury limited to healed carpal tunnel syndrome and a rotator cuff problem, and after settlement, worker diagnosed as also suffering from thoracic outlet syndrome).

We are further guided in our analysis of this case by *Lucero v. Yellow Freight System, Inc.*, 112 N.M. 662, 818 P.2d 863 (Ct. App.1991), the only reported decision construing the meaning of "mistake" in Section 52–5–9(B). This Court in *Lucero* interpreted " 'mistake' " or " 'inadvertence' " as having its common ordinary meaning. (The judge made a mistake, which was allegedly unintentionally induced by Worker's counsel, in entering a workers' compensation order awarding past medical expenses.) *Id.* at 666, 818 P.2d at 867 (citing *State v. Rodriguez*, 101 N.M. 192, 679 P.2d 1290 (Ct.App.1984)). Furthermore, in *Lucero* this Court noted that additional guidance in construing the language of Section 52–5–9(B) could be found by looking to our Rule of Civil Procedure SCRA 1986, 1–060(B) (Repl.1992), upon which Paragraph B of Section 52–5–9 is modeled, as well as to the identical language found in Federal Rule of Civil Procedure 60(b). *Lucero*, 112 N.M. at 664, 666, 818 P.2d at 865, 867.

The mistake for which a party seeks relief under Federal Rule 60(b)(1) can be a mistake of any party to the action and need not be the mistake of the movant. *See* 7 James Wm. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 60.22[1] (2d ed. 1993). Movant, however, is required to make some showing as to why he is justified in having failed to avoid the mistake, and the showing needs to be more than mere unhappiness with the judgment or carelessness. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2858 (1973 & Supp.1993). An example of mistake recognized under Federal Rule 60(b)(1) which is analogous to the case at hand is the setting aside of consent judgments which were agreed to based on erroneous factual representations. *See id.*

Under the facts and circumstances of the instant case, Worker's brain injury was not diagnosed until sixteen months after the settlement and the failure to diagnose the injury was based on the failure of Insurer to secure the neurological examination recommended by the University of New Mexico Hospital. Furthermore, Worker agreed to the lump sum settlement based on Insurer's negligent misrepresentations regarding the provisions of the New Mexico Workers' Compensation Act. Since Worker entered into the settlement under the mistaken belief that he had suffered no brain injury, we reverse the judge's denial to set aside the lump sum settlement. Our decision is consistent with NMSA 1978, Section 52–5–12 (Repl. Pamp.1987) which disfavors lump sum payment rather than periodic payments. In addition, under SCRA 1–060(B), it is consistent with the need to carefully balance the competing principles of finality on the one hand, while permitting relief from unjust judgments on the other. *See Koppenhaver v. Koppenhaver*, 101 N.M. 105, 108, 678 P.2d 1180, 1183 (Ct.App.), *cert. denied*, 101 N.M. 11, 677 P.2d 624 (1984). Under these exceptional and compelling circumstances, it is ap-

propriate to grant Worker the relief he requests.

*Conclusion*

Based on the foregoing, we reverse the judge's denial to set aside the settlement pursuant to Section 52–5–9(B) and we remand for a determination regarding Worker's disability due to his brain injury and for a consideration of an award for facial disfigurement and attorney fees. On appeal, Worker is awarded costs and $2000 in attorney fees. Oral argument is deemed unnecessary.

**IT IS SO ORDERED.**

DONNELLY and CHAVEZ, JJ., concur.