Certiorari Denied, September 16, 2011, No. 33,113; Certiorari Denied, September 20, 2011, No. 33,108

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-103

Filing Date:  June 10, 2011

Docket No. 29,975

DAVID MARTINEZ,

      Worker-Appellant,

v.

POJOAQUE GAMING, INC., d/b/a
CITIES OF GOLD CASINO,
POJOAQUE PUEBLO, and
FOOD INDUSTRIES SELF-INSURANCE FUND,

      Employer/Insurer-Appellees.

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Gregory Griego, Judge

Annie Laurie Coogan
Santa Fe, NM

for Appellant

Pueblo of Pojoaque Legal Department
Frank A. Demolli
Rosemary Maestas Swazo
Santa Fe, NM

for Appellees

**OPINION**

**VANZI, Judge.**

**{1}** This is the second time this case has come before us for review. *See Martinez v. Cities of Gold Casino* (*Martinez I*), 2009-NMCA-087, 146 N.M. 735, 215 P.3d 44, *cert. denied*, 2009-NMCERT-007, 147 N.M. 361, 223 P.3d 358. In the first appeal, we held that the Workers' Compensation Judge (WCJ) had the authority to order employer, Cities of Gold Casino (the Casino), to rehire employee, David Martinez (Worker), after the Casino fired Worker in retaliation for filing a workers' compensation claim. *Id.* ¶ 37. We affirmed the WCJ on the adequacy of the remedies available under the bad faith and retaliatory discharge provisions of the Worker's Compensation Act (Act) and on the constitutionality of the cap on attorney fees set forth in NMSA 1978, Section 52-1-54(I) (2003). *Martinez I*, 2009-NMCA-087, ¶¶ 34-36. Worker now appeals from the WCJ's decision that Worker could not be rehired by the Casino. Worker also asks this Court to award pre- and post-judgment interest on the bad faith awards and fees previously ordered by the WCJ and to allow the payment of attorney fees when an employer has acted in bad faith.

## BACKGROUND

**{2}** We briefly review the parties and the facts that gave rise to the original controversy, which are set forth in detail in *Martinez I*. The Casino is a commercial business enterprise that is owned and operated by Pojoaque Gaming, Inc. (PGI). PGI is an independent corporation owned by Pojoaque Pueblo (Pueblo), a federally recognized Indian tribal government. Another independent tribal entity, the Pueblo of Pojoaque Gaming Commission (PPGC), is responsible for issuing gaming licenses that certain employees are required to possess pursuant to the gaming compact between the tribe and the State of New Mexico. Art Garcia, a high-level supervisor above Worker, is an employee of both PGI and PPGC. Finally, the Food Industries Self-Insurance Fund (FISIF) is the workers' compensation insurance carrier PGI contracted with to provide workers' compensation insurance for the employees of the Casino.

**{3}** In February 2006, Worker filed a claim with the Workers' Compensation Administration (WCA) against PGI alleging that he was injured while working as a manager at the Casino. The parties were unable to successfully mediate the claim and, as a result, the case went to trial before the WCJ. Art Garcia was present at the trial and testified against Worker. On November 21, 2006, the WCJ filed a memorandum opinion finding for Worker and stating that Worker was entitled to medical and compensation benefits.

**{4}** Eight days after the WCJ's opinion was entered, the PPGC suspended Worker's license, and Worker was banned from the Casino premises until further notice. On January 25, 2007, Worker's license was permanently revoked by PPGC resulting in the termination of his employment at the Casino.

**{5}** After his termination, Worker filed a complaint with the WCA against PGI, the Pueblo, PPGC, and FISIF alleging bad faith, unfair claims processing, and retaliation as a direct result of the initial complaint he had filed with the WCA. Worker's claims were brought pursuant to NMSA 1978, Sections 52-1-28.1 (1990) and 52-1-28.2 (1990), which prohibit unfair and bad faith claim-processing practices and retaliation against employees seeking benefits. Defendants filed motions to dismiss for lack of subject matter jurisdiction,

2

and the WCJ concluded that PPGC was never Worker's employer and that it was immune from suit pursuant to its status as a tribal entity possessing sovereign immunity. Worker's complaint against PPGC was dismissed. However, the WCJ held that PGI had waived its sovereign immunity, and Worker's complaint against PGI could proceed.

{6}     On April 1, 2008, the WCJ issued a compensation order on the bad faith, unfair claims processing, and retaliation claims brought by Worker. The WCJ found that the revocation notice relied on non-existent evidence to support the decision to revoke Worker's gaming license. The WCJ further noted that Art Garcia, an employee of both PGI and PPGC who had testified at Worker's earlier compensation claim trial, had provided inaccurate or incomplete information to the PPGC. "By inference of timing," the WCJ stated, the information provided by Art Garcia was "intended to retaliate against Worker for his successful claim for workers' compensation." Accordingly, the actions of PGI constituted bad faith under Section 52-1-28.1(B). The WCJ awarded Worker a twenty-five percent increase in his initial compensation award for PGI's violation of this provision of the Act. In addition, the WCJ found that the actions of PGI were "intended to result in license revocation for Worker, with the intent of terminating Worker's employment with [PGI]." Thus, the WCJ concluded that PGI's actions constituted retaliation against Worker for seeking workers' compensation benefits in violation of Section 52-1-28.2. The WCJ imposed a $2500 penalty against PGI, payable to the WCA pursuant to the remedy provisions contained in Section 52-1-28.2(C) and (D). Although Section 52-1-28.2(B) requires employers who retaliate against employees for seeking workers' compensation benefits to rehire, the WCJ concluded that it had no authority to do so because it could not require PPGC to license Worker.

{7}     In the first appeal, Worker challenged the WCJ's decision that it could not order PGI to rehire Worker as well as the adequacy of the remedies and cost-sharing provisions established in Sections 52-1-28.1, 52-1-28.2, and Section 52-1-54(I) of the Act. On the issue of the rehire provision, we stated in *Martinez I* that "[g]iven the mandatory language of Section 52-1-28.2(B), the seriousness of the public policy at issue, and the conclusiveness of the finding by the WCJ that Worker's employment was terminated as a consequence of his filing a claim with the WCA, this Court concludes that PGI must rehire Worker." *Martinez I*, 2009-NMCA-087, ¶ 31. We rejected Worker's assertion that we should interpret Section 52-1-28.2 to include remedies beyond those expressly provided in the Act and his contention that the cap on attorney fees in Section 52-1-54(I) is unconstitutional. *Martinez I*, 2009-NMCA-087, ¶¶ 33-36.

{8}     Our Supreme Court denied Worker's petition for writ of certiorari, *Martinez v. Cities of Gold*, 2009-NMCERT-007, and on August 18, 2009, this Court issued a mandate remanding the case to the WCJ for further proceedings consistent with the *Martinez I* opinion.

{9}     After the mandate issued, Worker filed a motion to compel payment records and to enforce the compensation order and Court of Appeals mandate. Worker requested that he be rehired in a job of equal pay or status or for front and back pay in an amount to be determined. Worker also requested that the WCJ award pre- and post-judgment interest on

3

all amounts due. PGI filed a response, arguing that any award for pre- and post-judgment interest should be denied. PGI also argued that with regard to Worker's request for reinstatement, "[t]here remain issues of material fact to be determined which may necessitate that [PGI] present additional evidence to the [c]ourt."

{10}    The WCJ held a hearing on October 5, 2009, during which PGI's human resources director testified and presented evidence that there were no jobs within PGI that did not require a gaming license and that gaming licenses must be issued by the PPGC. Because Worker did not have a license, he would not be rehired. The WCJ filed a memorandum opinion on October 16, 2009, ruling that the twenty-five percent bad faith penalty provision due to Worker was $1,702.78. In addition, the WCJ concluded that "[n]otwithstanding the direction from the Court of Appeals the [WCA] is without authority to require [PPGC] to license Worker in order that he may be reemployed by PGI." The opinion was silent on Worker's request for pre- and post-judgment interest.

{11}    In this second appeal, Worker asserts that bad faith damages under the Act are inadequate when a worker is terminated and cannot be rehired. Worker further contends that pre- and post-judgment interest should be awarded on all damages awarded, and the attorney fees provisions in the Act are either unconstitutional or ambiguous. We address each argument in turn.

**DISCUSSION**

**The Adequacy of Bad Faith Damages Under the Act**

{12}    On remand, the WCJ again concluded that he could not require PGI to rehire Worker. In light of that ruling, Worker does not argue that because the WCJ failed to follow our mandate, its decision is erroneous as a matter of law. Instead, Worker contends that because he "[cannot] and will not be rehired by [PGI,]" we should look for other remedies to compensate him. He asks this Court to provide compensation benefits for the statutory period of 500 weeks in lieu of his rehire. Worker asks us to be guided by fundamental fairness and argues that Section 52-1-28.2 can be interpreted to include other remedies when the employer cannot rehire a worker fired in retaliation for seeking medical and compensation benefits. We disagree, and Worker gives us no authority for this proposition. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (noting that where a party cites no authority to support an argument, we may assume no such authority exists).

{13}    PGI, on the other hand, continues to argue—as it did in *Martinez I*—that PPGC has full authority to revoke Worker's license; Worker was provided an appeal process to seek reinstatement of his gaming license, which he did not do; and PPGC is not subject to the jurisdiction of the WCA. PGI claims that it cannot rehire Worker because he does not have a license to do his old job. Apparently undeterred by the WCJ's findings that the actions of PGI in terminating Worker constituted bad faith, PGI continues to disparage Worker and says that "Worker should learn that, when working for a tribal entity, [he is] possibly subject to federal, state and tribal law and that these laws are not necessarily in harmony." Further,

4

in response to Worker's contention that he has been unemployed since his termination, PGI states that Worker's assertion "shows a complete ignorance of federal and tribal law" and that "[b]oth Worker and his attorney should learn that they must exhaust their tribal remedies before bringing their complaints to another forum." PGI apparently still refuses to acknowledge its role in Worker's termination. In particular, PGI continues to ignore the WCJ's findings that Worker's gaming license was revoked because of the actions of PGI and that the person who "provided inaccurate or incomplete information to the [PPGC]" resulting in Worker's license revocation is the same person who is also "an employee and agent of [PGI] and [PPGC]." In any event, these issues have already been decided in *Martinez I*, and we do not revisit them here.

**{14}**     As we have noted, PGI argues that the bad faith damages—essentially the award of no damages in this case—are adequate and that it simply cannot rehire Worker. Worker cites to cases in which courts in other jurisdictions have fashioned alternative remedies, such as back pay and front pay, when the reinstatement of a terminated employee is not feasible. However, those cases were decided in the context of a range of available remedies to make the injured worker whole and are therefore not helpful to this decision. *See, e.g.*, *Whittington v. Nordam Group Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005) (holding that front pay is an equitable remedy in age discrimination case); *Mechling v. K-Mart Corp.*, 574 N.E.2d 557, 559 (Ohio Ct. App. 1989) (holding that an employee who had been discharged for filing a workers' compensation claim was entitled to reinstatement of benefits, even though that remedy was not specifically mentioned in the statute). Accordingly, we must rely on the language of the Act to determine its meaning.

**{15}**     We recognize that some state statutes provide that employers must rehire but that when an employer refuses to do so, it must pay the employee lost wages. *See, e.g.*, Wis. Stat. Ann. § 102.35(3) (West 2005). The Act, however, is unequivocal in its language. It is short, unambiguous, and to the point. We repeat Section 52-1-28.2(B)'s requirement that "[a]ny person who discharges a worker in violation of Subsection A of this section *shall rehire* that worker pursuant to the provisions of the . . . Act . . . provided the worker agrees to be rehired." (Emphasis added.) This statutory provision does not recognize that an employer might have legitimate business reasons for not rehiring the employee nor does it allow consideration of any other remedies as a substitution for rehire. More importantly, nothing in Section 52-1-28.2(B) allows an employer who has acted in bad faith and with "willful, wanton or reckless disregard" of a worker's rights to escape with no sanction as the WCJ decided in this instance. *See* § 52-1-54(I).

**{16}**     As we explained in *Martinez I*, "by enacting Section 52-1-28.2(B), the Legislature expressly set out the clear mandate that the act of retaliatory discharge is a clear violation of public policy." *Martinez I*, 2009-NMCA-087, ¶ 30 (alteration omitted) (internal quotation marks and citation omitted). The overall purpose of the Act would be seriously undermined if employers could be relieved of the responsibility expressly placed upon them by the Act by openly discharging workers for exercising their statutory rights. Further, exempting an employer from the mandatory rehiring requirements of the statute permits it to defeat the Legislature's intent with regard to compensating a worker who has been retaliated against. To allow such a result would open the door for virtually every employer to circumvent the

statutory mandate by arguing that it had a valid justification as to why it could not rehire a terminated worker. Finally, we observe that such an exemption could readily discourage employees from exercising their rights under the Act.

**{17}** In this case, our mandate and opinion in the prior appeal limited the WCJ to issuing an order requiring PGI to rehire Worker. "It is well settled that the duty of a lower court on remand is to comply with the mandate of the appellate court, and to obey the directions therein without variation[.]" *Vinton Eppsco Inc. of Albuquerque v. Showe Homes, Inc.*, 97 N.M. 225, 226, 638 P.2d 1070, 1071 (1981) (emphasis omitted). Where there is a question as to whether a lower court followed this Court's mandate on remand, "[i]t is within the power, and it is the duty, of this [C]ourt to construe its own mandate in case there is any ambiguity in the same." *State ex rel. Bujac v. Dist. Ct. of Second Judicial Dist.*, 28 N.M. 28, 32, 205 P. 716, 718 (1922). We review the question of whether the WCJ has followed its authority on remand de novo, as it involves a question of law. *See Garcia v. Garcia*, 2010-NMCA-014, ¶ 27, 147 N.M. 652, 227 P.3d 621, *cert. quashed*, 2010-NMCERT-007, 148 N.M. 611, 241 P.3d 612.

**{18}** In *Martinez I*, this Court reversed in part the WCJ and remanded with the instruction that PGI must rehire Worker in accordance with the mandatory provision of Section 52-1-28.2(B). *Martinez I*, 2009-NMCA-087, ¶ 37. We did not mandate that the WCJ make findings related to whether PGI could or would rehire Worker, or whether alternative remedies existed. Rather, we mandated that the WCJ order PGI to rehire Worker, which the WCJ did not do. Instead, at PGI's request, the WCJ held a hearing and then concluded that "[n]othwistanding direction from the Court of Appeals the [WCA] is without authority to require [PPGC] to license Worker in order that he may be reemployed by PGI." By virtue of the WCJ's failure to follow our mandate, its decision is erroneous as a matter of law. We remand again with instructions to the WCJ to order PGI to rehire Worker.

**Pre- and Post-Judgment Interest**

**{19}** Worker argues that he is entitled to pre- and post-judgment interest on previously awarded damages and attorney fees. Specifically, Worker contends that he is entitled to such interest because the judgments in this case for the bad faith damages to Worker and bad faith award of attorney fees were entered in April and June 2008 and were not paid until September and December 2009. We turn first to the issue of pre-judgment interest and then address Worker's request for post-judgment interest.

**{20}** Whether to award pre-judgment interest pursuant to NMSA 1978, Section 56-8-4 (2004) is a decision left to the sound discretion of the WCJ, and we will reverse only for an abuse of that discretion. *See Gonzales v. Surgidev Corp.*, 120 N.M. 133, 150, 899 P.2d 576, 593 (1995). Section 56-8-4(B) provides:

> [T]he court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering, among other things:

6

> (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
>
> (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

**{21}** The WCJ did not address or make any specific factual findings regarding Worker's request for pre-judgment interest in his memorandum opinion or compensation order. We assume therefore—and the parties do not disagree—that Worker's motion was denied. Our Supreme Court has stated that a court's reasons for denying pre-judgment interest need not be in writing but need only be ascertainable from the record and not contrary to logic and reason. *Gonzales*, 120 N.M. at 150, 899 P.2d at 593.

**{22}** Worker here does not contend that the WCJ abused his discretion in failing to grant Worker pre-judgment interest. Rather, he argues only that there was "ample evidence" to support such an award based on the bad faith actions of PGI. We observe that Section 56-8-4(B) is a discretionary statute designed to encourage settlement and discourage delay. In this case, Worker does not argue that PGI caused any unreasonable delay in the proceedings or that it made an unreasonable settlement offer prior to trial. He argues only that "there was substantial cause to believe from the initial filing of the [a]pplication by . . . Worker and his witness that bad faith and wrongful termination had been committed." Under the circumstances, we cannot say that the WCJ's ruling denying Worker's request for pre-judgment interest was contrary to logic and reason.

**{23}** Worker next contends that he is entitled to post-judgment interest at a rate of fifteen percent. Section 56-8-4(A) states the following:

> Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of eight and three-fourths percent per year, unless:
>
> (1)     the judgment is rendered on a written instrument having a different rate of interest, in which case interest shall be computed at a rate no higher than specified in the instrument; or
>
> (2)     the judgment is based on tortious conduct, bad faith or intentional or willful acts, in which case interest shall be computed at the rate of fifteen percent.

**{24}** PGI seems to argue that because it was not responsible for any delay in enforcing the WCJ's original compensation order, the WCJ properly denied Worker's request for post-judgment interest. However, unlike a discretionary award of pre-judgment interest under Section 56-8-4(B), "an award of post-judgment interest under Section 56-8-4(A) is mandatory." *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 22, 136 N.M. 647, 103 P.3d 571. Further, this Court has noted that "[w]hen a judgment is based on tortious conduct, bad faith, or a finding that the defendant acted intentionally or willfully, a court *must* award interest at the higher rate of [fifteen] percent." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 55, 131 N.M. 100, 33 P.3d 651 (emphasis added). Here, the WCJ specifically found that PGI intended to retaliate against Worker for his successful workers'

7

compensation claim, that the actions of PGI constituted bad faith, and that PGI's actions amounted to "fraud, malice, oppression or willful, wanton or reckless disregard of the rights of [Worker]." As a result, post-judgment interest for Worker's successful bad faith claim should have been awarded and computed at the proper rate of fifteen percent. We reverse the WCJ's denial of post-judgment interest to Worker.

**Attorney Fees Provisions Under the Act**

**{25}** In this second appeal, Worker again argues that the cap on attorney fees under the Act is unconstitutional and urges us to "depart from the plain meaning of the statute because not to do so results in an absurdity." Worker's arguments were previously raised and addressed in *Martinez I*. In that opinion, we cited to *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 3, 137 N.M. 734, 114 P.3d 1050, in which our Supreme Court held that the fee limitations in Section 52-1-54(I) are constitutional. *Martinez I*, 2009-NMCA-087, ¶ 36. Accordingly, we said, "[w]e have no authority to do as Worker requests." *Id.* As we have previously decided this issue in *Martinez I*, we do not reach this question again today.

**CONCLUSION**

**{26}** Pursuant to Section 52-1-28.2(B), we reverse the WCJ and remand with instructions to order PGI to rehire Worker. We affirm the WCJ's denial of pre-judgment interest, but we reverse on the issue of post-judgment interest as set forth above. Finally, we affirm on the issue of attorney fees.

**{27}  IT IS SO ORDERED.**

 

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**MICHAEL E. VIGIL, Judge**

**Topic Index for *Martinez v. Pojoaque Gaming, Inc.*, No. 29,975**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| AE-SR | Standard of Review |
| | |
| **EL** | **EMPLOYMENT LAW** |
| EL-TE | Termination of Employment |

| | |
|---|---|
| **GV** | **GOVERNMENT** |
| GV-SI | Sovereign Immunity |
| | |
| **IL** | **INDIAN LAW** |
| IL-GA | Gaming |
| IL-TJ | Tribal and State Authority and Jurisdiction |
| | |
| **JM** | **JUDGMENT** |
| JM-IN | Interest |
| JM-PJ | Post Judgment Relief |
| JM-PI | Pre-Judgment Interest |
| | |
| **RE** | **REMEDIES** |
| RE-PJ | Prejudgment Interest |
| | |
| **WC** | **WORKERS COMPENSATION** |
| WC-AF | Attorney Fees |
| WC-BF | Bad Faith |
| WC-RI | Rehire |
| WC-RT | Retaliation |
| WC-WG | Workers' Compensation, General |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |