This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36227**

**ERIC TRUJILLO,**

Worker-Appellant,

v.

**LOS ALAMOS NATIONAL LABORATORY,**

Employer/Self-Insured/Appellee.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Leonard J. Padilla, Workers' Compensation Judge**

Annie-Laurie Coogan LLC
Annie-Laurie Coogan
Santa Fe, NM

for Appellant

Camp Law, LLC
Minerva Camp
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** Eric Trujillo (Worker) appeals an order of the Workers' Compensation Administration (WCA) granting Los Alamos National Laboratory's (Employer's) motion to reconsider the date Worker reached maximum medical improvement (MMI) and consequently decreasing the period of time for which Worker was awarded temporary total disability (TTD) benefits. Worker raises a host of issues on appeal, ranging from the Workers' Compensation Judge's (WCJ) authority to reconsider Worker's MMI date

to the credibility of the medical opinions on which the revised MMI conclusion rested. We decline to address many of Worker's arguments and find no merit in the rest, but reverse nonetheless, concluding that the WCJ failed to act in accordance with our mandate on remand from Worker's first appeal. We therefore remand for limited further proceedings consistent with this and our prior opinion. *Cf. Martinez v. Pojoaque Gaming, Inc.*, 2011-NMCA-103, ¶¶ 12, 18, 150 N.M. 629, 264 P.3d 725 (reversing a WCJ opinion for failing to comply with our mandate despite the worker's failure to make that argument).

**BACKGROUND**

**{2}**     On October 8, 2014, the WCJ entered a compensation order in Employer's favor, concluding that Worker had "fail[ed] to prove . . . that the [workplace] accident of November 30, 2012, caused [his injuries]" and that Worker therefore was not entitled to disability benefits. Although the WCJ's causation conclusion was dispositive of Worker's compensation claim, *see* NMSA 1978, § 52-1-28(A) (1987) (providing that claims are allowed only when a worker suffers "an accidental injury arising out of and in the course of [the worker's] employment"), the WCJ separately concluded—without specifying the relevant injuries—that Worker "ha[d] not reached MMI" as of the date of the order's entry.

**{3}**     This Court reversed the October 2014 order in *Trujillo v. Los Alamos National Laboratory* (*Trujillo I*), 2016-NMCA-041, 368 P.3d 1259, holding that the WCJ's causation conclusion was not supported by substantial evidence because Worker had proven to a reasonable degree of medical probability that his workplace accident had caused him to suffer cervical, lumbar, thoracic, and bilateral elbow strains. *Id.* ¶ 46. However, because it was "unclear to us whether [those] injuries [had] resulted in a disability," *id.* ¶ 46 n.4, we declined to hold that Worker's claim was compensable and elected instead to "remand . . . to the [WCA] for additional evaluation of Worker's entitlement to TTD and medical benefits." *Id.* ¶ 47. Our mandate directed the WCJ to conduct "further proceedings consistent with [our] decision."

**{4}**     On remand, the WCJ concluded that all four of the injuries covered by our holding in *Trujillo I* were compensable under the Workers' Compensation Act in a new compensation order entered on July 18, 2016.[1] The WCJ further concluded——that Worker "was not at MMI" as of October 8, 2014. On August 9, 2016, Employer moved for reconsideration of that conclusion and asked the WCJ to conclude instead that Worker had reached MMI on March 1, 2013. As grounds for its motion, Employer relied on the healthcare provider form letter completed by Dr. Sara Pasqualoni, in which Dr. Pasqualoni opined that Worker had reached MMI "as of March of 2013." Although Dr. Pasqualoni acknowledged treating Worker for "[c]ontusions [to the] back, neck[,] and upper extremities[ and] cervical, thoracic[,] and lumbar strain[s,]" she based her MMI conclusion solely on Worker's lumbar strain, noting that "[m]ultiple providers [had] diagnosed [Worker] with lumbar strain" and that her review of medical literature indicated that "[l]umbar sprains and strains typically last [five] days[,]" that "[ninety

---

1Employer does not challenge the compensability conclusion or any other conclusion on appeal.

percent] of lumbar sprains and strains resolve within [six] weeks," and that "[MMI] is frequently achieved within [ninety] days[.]" The WCJ deferred ruling on Employer's motion because the evidence "ha[d] not been adequately developed as required by remand from the Court of Appeals[,]" and, believing that an independent medical examination (IME) would "assist . . . in determin[ing the] issues[,]" issued an order compelling Worker to attend an IME conducted by Dr. Paul Legant "to obtain the information requested."

{5}     Worker moved to clarify the IME order. Although Worker agreed that the order was "an appropriate use of the WCJ's power," he contended that the IME could not "be used to change the law of the case." Worker asserted that both our holding in *Trujillo I* (that Worker's workplace accident had caused him to suffer cervical, thoracic, lumbar, and bilateral elbow strains) and the WCJ's conclusion that Worker had not reached MMI as of October 8, 2014, were the law of the case and argued that the WCJ was precluded from modifying the July 18 order's conclusions on either issue. Worker also asked that Dr. Legant "be provided with the law of the case" and, in a proposed form letter to Dr. Legant, suggested that the parties inform him that (1) "it ha[d] been determined by the [c]ourts that there is a causal relationship between Worker's accidental fall of November 30, 2012[,] and his cervical, thoracic, lumbar[,] and bilateral elbow strains"; and (2) "Worker was not at MMI on October 8, 2014." The proposed letter further asked Dr. Legant to opine as to the date on which those four injuries had reached MMI. In response, the WCJ wrote to counsel on November 14, 2016, informing the parties that none of the WCJ's orders regarding the IME had "suggest[ed], direct[ed,] or order[ed] that any additional information be provided to Dr. Legant other than that contained in [a m]andatory [f]orm [l]etter" and that "[t]he only exception [was] that medical deposition testimony [could] be provided at the parties' discretion."

{6}     After Worker attended the IME with Dr. Legant, Employer notified the WCJ that Dr. Legant had completed an IME report, attaching the report to the filed notice. The IME consisted of an inquiry as to Worker's subjective symptoms; a review of medical records from 1995 to 2016, as well as deposition testimony provided by the parties and Dr. Pasqualoni's form letter; and a physical examination. In his report, Dr. Legant "agree[d] with Dr. Pasqualoni that [Worker] would have reached MMI [on] approximately [March 1, 2013, with] reference [to] the injury of [November 30, 2012], and the diagnosis [of] lumbar strain[ and] contusion." Dr. Legant "also agree[d] with Dr. Pasqualoni's associated diagnoses" of the injuries caused by Worker's workplace accident "as noted in her form letter to healthcare provider[,]" including "contusions[ of the] back, neck, and upper extremity (left shoulder in particular) and cervical, thoracic, and lumbar strain[s]."

{7}     The WCJ entered an order granting Employer's motion to reconsider on December 6, 2016. The WCJ dismissed Worker's law of the case arguments, reasoning that the law of the case doctrine "is flexible and discretionary, and does not require a [WCJ] to uphold a clearly incorrect decision" and that it "allows, but does not require, [a WCJ] to refuse to consider matters already decided in the case." Noting that NMSA 1978, Section 52-5-9 (1989) "provides for modification of a compensation order in cases of mistake or inadvertence[,]" the WCJ concluded that the prior order's MMI conclusion

had been "a mistake . . . based on the lack of information concerning MMI presented by the parties at the [f]ormal hearing[.]" The WCJ found that Dr. Legant's IME report and Dr. Pasqualoni's form letter provided the information necessary to evaluate Worker's MMI date, and, on the basis of those documents, concluded that Worker had reached MMI on March 1, 2013. That conclusion is the subject of this appeal.

**DISCUSSION**

**{8}**     Worker broadly asserts that the WCJ erred in reaching a different conclusion as to Worker's MMI date on remand because (1) the law of the case doctrine and this Court's opinion in *Trujillo I* precluded the WCJ from reconsidering Worker's MMI date; (2) the WCJ's original conclusion that Worker had not reached MMI as of October 8, 2014, was correct, and the WCJ lacked authority to reconsider Worker's MMI date under our Rules of Civil Procedure or Section 52-5-9; and (3) the evidence relied upon by the WCJ as the basis for the March 1, 2013, MMI date was either inadmissible or of so little value that it could not support the WCJ's conclusion that Worker had reached MMI on March 1, 2013.

**I.     Standards of Review**

**{9}**     "Whether law of the case applies, as well as how it applies, are [issues] of law subject to de novo review." *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 20, 145 N.M. 769, 205 P.3d 816. So are the interpretation and applicability of our opinion and mandate in *Trujillo I* and the WCJ's compliance with that opinion and mandate. *See Martinez*, 2011-NMCA-103, ¶ 17 ("We review the question of whether the WCJ has followed its authority on remand de novo, as it involves a question of law.").

**{10}**     We likewise review de novo the WCJ's interpretation of Section 52-5-9(B). *Souter v. Ancae Heating & Air Conditioning*, 2002-NMCA-078, ¶ 26, 132 N.M. 608, 52 P.3d 980. However, "[w]hether [a worker] has made a proper showing for modification of a compensation order pursuant to Section 52-5-9 is within the sound discretion of the [WCJ] and [the WCJ's determination] is not to be reversed absent a showing of abuse of discretion." *Curliss v. B & C Auto Parts*, 1993-NMCA-139, ¶ 5, 116 N.M. 668, 866 P.2d 396. "[A]buse of discretion in the context of workers' compensation cases is inextricably intertwined with the substantial evidence standard[,]" *id.*, and we apply whole record review to the WCJ's determinations under that standard. *Trujillo I*, 2016-NMCA-041, ¶ 15.

**{11}**     On whole record review, "we view the evidence in the light most favorable to the agency decision, but may not view favorable evidence with total disregard to contravening evidence." *Id.* (alteration, internal quotation marks, and citation omitted). "After reviewing all the evidence, both favorable and unfavorable, we 'disregard that which has little or no worth' and then 'decide if there is substantial evidence in the whole record to support the agency's finding or decision.' " *Id.* (quoting *Tallman v. ABF (Arkansas Best Freight)*, 1988-NMCA-091, ¶¶ 9-10, 108 N.M. 124, 767 P.2d 363. "[W]hether a finding is supported by substantial evidence is a question of law, not of

fact." *Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 14, 115 N.M. 181, 848 P.2d 1108.

## II.    Preclusion

**{12}**    The law of the case doctrine did not preclude reevaluation of Worker's MMI date on remand. *See Taylor v. Allegretto*, 1994-NMSC-081, ¶ 7, 118 N.M. 85, 879 P.2d 86 (holding that an issue was not precluded by the law of the case doctrine because a ruling on the issue was "not necessary to the disposition of the case" or "invoked by the parties" on the first appeal). The WCJ ruled against Worker on the issue of causation in the October 2014 order, concluding that Worker had failed to prove that his workplace accident had caused *any* of his diagnosed injuries, and the conclusion that Worker had not reached MMI was thus superfluous. Worker could not have reached MMI for accidental injuries that he had not sustained, and our reversal of the October 2014 order did not act to apply an MMI date disconnected from any particular injury to the four injuries newly held to be causally related to Worker's workplace accident. *Cf. Smith v. Cutler Repaving*, 1999-NMCA-030, ¶ 10, 126 N.M. 725, 974 P.2d 1182 ("We address each MMI finding separately.").

**{13}**    Moreover, our opinion in *Trujillo I* did not address Worker's entitlement to disability benefits. Instead, we expressly stated that it was "unclear" to us whether Worker's injuries had resulted in a disability and directed the WCJ to further "evaluat[e] Worker's entitlement to TTD and medical benefits in light of [our] opinion." 2016-NMCA-041, ¶¶ 46 n.4, 47. Further evaluation necessarily involved an assessment of Worker's MMI date because that date controlled the amount of temporary disability benefits to which Worker would be entitled if he successfully proved that his injuries had resulted in a disability. *See* NMSA 1978, § 52-1-25.1(A) (2017) (defining "temporary total disability" as a worker's "inability . . . to perform the duties of [the worker's] employment prior to the date of the worker's maximum medical improvement").[2] The WCJ thus did not impermissibly "enlarge or alter the issues presented in [our] mandate[,]" *UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22, in reaching a conclusion on the MMI issue different from the one reached in the October 2014 order.

## III.    Authority to Modify MMI Date

---

[2] Worker asserts that *Trujillo I* is wrong insofar as it implies that "it is unclear . . . whether Worker's injuries resulted in TTD prior to October 8, 2014" because, "[b]y operation of law, if a [w]orker [(1)] suffers from a work-related injury [that] requires his removal from the work force . . . [, (2)] is not at MMI[,] and [(3)] has not been rehired by anyone in any capacity[, the worker] is entitled to TTD." That argument is based on a misreading of our opinion. Nowhere in *Trujillo I* did we imply that it was unclear whether Worker would be entitled to TTD benefits if he was statutorily eligible for them. Instead, what was "unclear" to us was whether Worker's injuries had resulted in a disability—i.e. whether (as Worker puts it) they "require[d] his removal from the work force"—in the first place. *Trujillo I*, 2016-NMCA-041, ¶ 46 n.4 (citing *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 22, 137 N.M. 497, 113 P.3d 320). *Trujillo I* thus did not foreclose the possibility that the WCJ would conclude on remand that Worker's injuries had not resulted in a disability and that Worker consequently was not entitled to TTD benefits at all.

**{14}** Next, the WCJ's decision to reconsider Worker's MMI date was within the WCJ's authority to modify a prior compensation order under Section 52-5-9, which provides that a WCJ, upon application and after a hearing, may "modify any previous decision, award or action" upon grounds including "mistake, inadvertence, surprise or excusable neglect[.]" Section 52-5-9(B)(2) authorizes WCJs to modify any portion of a prior compensation order based on a mistake of law, *see Lucero v. Yellow Freight Sys., Inc.*, 1991-NMCA-087, ¶¶ 13-21, 112 N.M. 662, 818 P.2d 863 *see also Deerman v. Bd. of Cty. Comm'rs of Cty. of Dona Ana*, 1993-NMCA-123, ¶ 14, 116 N.M. 501, 864 P.2d 317, although we are "reluctant" to allow parties to use the statute as a means of "circumvent[ing] the time limits for an appeal." *Lucero*, 1991-NMCA-087, ¶ 17. In this case, Employer moved for reconsideration of the July 18, 2016, order on August 9, 2016, within the thirty-day time limit for filing an appeal set by our Rules of Appellate Procedure, *see* Rule 12-601 NMRA; *see also* NMSA 1978, § 52-5-8 (1989),[3] and Section 52-5-9 thus authorized the WCJ to modify the July 18 order's conclusion regarding MMI if that conclusion was premised on a mistake of law.

**{15}** Worker argues that the WCJ did not make a mistake in concluding that MMI had not been reached by October 2014 because "the uncontroverted medical evidence and testimony [at the time of the formal hearing] in June of 2014[] was that Worker was not at [MMI] for his injuries." In other words, Worker argues that, because there was evidence indicating that he was not at MMI and "no medical testimony . . . that [he] was at MMI," the WCJ's July 2016 determination that Worker had not reached MMI by October 2014 was correct, and thus could not be mistaken. We disagree for two reasons. First, Worker's argument is based on the assumption that Employer bore the burden of proving that Worker had reached MMI at the time of trial. It did not. To the contrary, under Section 52-1-25.1(A), a worker seeking to obtain TTD benefits bears the burden of proving that the worker has *not* reached MMI. *See Baca v. Bueno Foods*, 1988-NMCA-112, ¶¶ 17-20, 108 N.M. 98, 766 P.2d 1332. It was consequently Worker's burden to prove that he had not reached MMI by October 14, 2014, rather than Employer's burden to prove that Worker had reached MMI before then, and the absence of evidence showing that Worker had reached MMI by October 14, 2014, is immaterial.

**{16}** Second, none of the evidence cited by Worker in support of his argument—the deposition testimony of Drs. Pasqualoni, Elliot, and Schwartz—was substantial evidence that Worker's cervical, lumbar, thoracic, and bilateral elbow strains were not at MMI as of October 8, 2014.[4] Dr. Pasqualoni testified that she had not placed Worker at

---

[3] Worker argues that Section 52-5-9 did not empower the WCJ to reconsider the date Worker reached MMI because Employer "did not file a [m]otion for [r]econsideration, appeal[,] or cross[-]appeal of any of the WCJ's [f]indings or [c]onclusions in the October 8, 2014[, compensation order]." We disagree. This Court *reversed* the October 2014 compensation order in *Trujillo I*. The motion to reconsider that convinced the WCJ to alter its MMI conclusion was thus based not on the October 2014 compensation order, but on the July 18, 2016, compensation order entered following remand.

[4] Worker repeatedly alleges in his briefing that, because Employer engaged in unfair claims processing or participated in bad faith in the proceedings below, he was denied treatment for his injuries and unable to obtain evidence to support his compensation claim. These allegations have little to do with the issues before us in this

MMI at the time of a visit on February 6, 2013, but that she would defer to Dr. Elliot's opinion on the issue. Dr. Elliot testified in a January 30, 2014, deposition that Worker had not been at MMI on January 9, 2013, the only time she had ever treated him. She reaffirmed that opinion in a second deposition taken four months later without having treated Worker again in the interim. However, during her first deposition, Dr. Elliot also testified that she had not come to any opinions regarding Worker's MMI date at the time of Worker's visit, a statement that, in light of her other testimony, could only mean that she had no opinion on what future date Worker might reach MMI. Dr. Elliot's testimony is thus not evidence that Worker's MMI date was any later than January 9, 2013.

{17}    The cited portions of Dr. Schwartz's testimony appear at first glance to support a later MMI date than the testimony of Drs. Pasqualoni and Elliot, but closer examination reveals that her testimony was equivocal and that Dr. Schwartz's opinion as to MMI was based on incomplete information. In her May 20, 2014, deposition, Dr. Schwartz testified that, at the time of her first office visit with Worker in March 2014, she had "had a general sense" and had "even said" that Worker "was likely at MMI." However, because she had not obtained "complete records" and had no "history with [Worker as] a patient" at the time of Worker's first visit, she testified that she "wouldn't have said that [Worker was] absolutely at MMI" and that, "if [she] had to . . . say on the record, [she] would say [Worker] was not at MMI because . . . , in [her] opinion at [the time of the visit], [he] hadn't really had the benefit of . . . much treatment." Dr. Schwartz had seen Worker again in May 2014, and she testified that, although she had not placed Worker at MMI during that visit, a report she completed after the visit would "reflect that [she] thought [Worker] would be at a point of MMI in the next three months." Yet, Dr. Schwartz also testified that she had based that opinion on Worker's reporting of the treatment he had undergone before May 2014, which "was kind of foggy[,]" and that she had consequently been unaware that Worker had already completed eight sessions of physical therapy for his injuries.

{18}    Moreover, Dr. Schwartz's testimony regarding MMI was based on her professional opinion that Worker had aggravated an "inflammatory degenerative disease disc issue" as a result of his workplace accident. That testimony runs directly counter to *Trujillo I*, in which we affirmed the WCJ's conclusion that Worker had failed to prove that his workplace accident had caused an aggravation of a preexisting back injury. 2016-NMCA-041, ¶¶ 36, 44. As a matter of law, the only injuries for which an MMI date was relevant after our remand were Worker's cervical, lumbar, thoracic, and bilateral elbow strains, and Dr. Schwartz's conclusion that Worker had not reached MMI for an aggravation of a preexisting injury thus had no bearing on the MMI issues before the WCJ in July 2016. Because it was equivocal, based on incomplete information, and premised on an irrelevant injury, Dr. Schwartz's testimony was of little worth in determining Worker's MMI date.

{19}    Based on our review of the record, substantial evidence did not support the WCJ's conclusion that Worker had not reached MMI by October 8, 2014. We therefore

appeal. Our opinion does not prevent Worker from pursuing any bad faith claims he may have. *See generally* NMSA 1978, § 52-1-28.1 (1990).

agree with the WCJ that the July 18, 2016, order's conclusion as to Worker's MMI date was "mistake[nly] . . . based on [a] lack of information," and conclude that it was not an abuse of discretion for the WCJ to correct that error by applying the proper standard to the evidence. The question thus becomes whether the WCJ erred in reaching its revised conclusion that Worker had reached MMI by March 1, 2013, an issue to which we now turn.

## IV.    The March 1, 2013, MMI Date

**{20}**    Worker's final argument is that it was error for the WCJ to conclude that Worker had reached MMI for all of his injuries on March 1, 2013, on the basis of Dr. Pasqualoni's form letter and Dr. Legant's IME report. Worker contends the form letter could not support the modified MMI date because Dr. Pasqualoni (1) was no longer Worker's authorized healthcare provider at the time she completed the form letter, having previously referred Worker to Dr. Elliot; (2) did not perform a physical examination of Worker prior to completing the form letter; (3) is employed by Employer and consequently has a strong bias against Worker; (4) treats only Employer's employees and is not qualified or competent to opine on MMI; (5) determined Worker's MMI date following a six-month reevaluation of Worker pursuant to NMSA 1978, Section 52-1-51(D) (2013), which Worker contends was "an inappropriate instrument" for determining MMI; and (6) contradicted her previous testimony in arriving at the March 1, 2013, MMI date.

**{21}**    We decline to address any of these arguments. The sole injury for which an MMI date was addressed in Dr. Pasqualoni's form letter was Worker's lumbar strain. Dr. Legant also addressed Worker's lumbar strain in his IME report, and our review of the report indicates that it constituted substantial evidence of the March 1, 2013, MMI date for that injury, as well as for Worker's cervical and thoracic strains. The report gives us no basis for concluding that Dr. Legant reached anything other than an independent conclusion as to Worker's MMI date, and Worker does not argue otherwise.

**{22}**    Worker does argue, however, that the report was not "credible evidence" that Worker had reached MMI by March 1, 2013, because (1) the report was inadmissible hearsay under our decision in *Valenzuela v. A.S. Horner, Inc.*, 2016-NMCA-031, ¶ 9, 367 P.3d 901, or principles of due process; and (2) Worker was not permitted to provide Dr. Legant with "questions from counsel, the law of the case[, or] a proper foundation." We do not reach Worker's hearsay argument because Worker has failed to support it with any record citation showing that he preserved the issue below. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, [a] party must *specifically* point out where, in the record, the party invoked the [lower] court's ruling on [an] issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." (emphasis added)).

**{23}**    We disagree with Worker's second argument, which seems to be that the IME report was not substantial evidence of Worker's MMI date because the WCJ restricted the information that Worker could provide Dr. Legant. We fail to see how Worker's

inability to provide Dr. Legant with our legal conclusions in *Trujillo I* (or with the incorrect assertion that we had determined that Worker was not at MMI on October 8, 2014) affects in any way the validity of Dr. Legant's medical opinion as to the date Worker reached MMI. Nor do we believe that counsel's asserted inability to ask Dr. Legant unspecified questions detracts from the evidentiary value of that opinion. And, although Worker argues that Dr. Legant was not provided with a "proper foundation" before he completed his IME report, he does not support this contention with any showing that the medical history Dr. Legant reviewed was incomplete, and we therefore decline to review the argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

**{24}** We nevertheless hold that the WCJ erred in concluding that Worker reached MMI for his injuries on March 1, 2013, because the process by which the WCJ made that determination was inconsistent with our opinion and mandate in *Trujillo I. See Martinez*, 2011-NMCA-103, ¶ 17 ("It is well settled that the duty of a lower court on remand is to comply with the mandate of the appellate court, and to obey the directions therein without variation." (alteration, internal quotation marks, and citation omitted)); *see also Weaver v. Weaver*, 1983-NMSC-063, ¶ 3, 100 N.M. 165, 667 P.2d 970 ("Where the mandate directs that . . . a designated course be pursued, the [decision-maker on remand] must yield obedience to the directions given." (emphasis, internal quotation marks, and citation omitted)). Under our mandate, the WCJ was bound to determine issues relating to Worker's disability "consistent[ly] with [our] decision[,]" in which we held that Worker had proven that his bilateral elbow strain was caused by his workplace accident. As a consequence, the WCJ was not free to disregard Worker's bilateral elbow strain in adjudicating other aspects of Worker's claim, including, after their compensability was determined, the date on which Worker reached MMI for all of his injuries. But the record demonstrates that the WCJ did just that in concluding that Worker reached MMI on March 1, 2013.

**{25}** The WCJ deferred ruling on Employer's motion for reconsideration and ordered Worker to attend the IME with Dr. Legant in order to obtain evidence that the WCJ believed—and Employer agrees—was needed to permit evaluation of Worker's MMI date. Worker then attempted to apprise Dr. Legant of the "law of the case" through his motion for clarification and attached form letter, proposing to inform Dr. Legant that this Court had determined that Worker had suffered cervical, lumbar, thoracic, and bilateral elbow strains and to ask for Dr. Legant's opinion regarding the date on which Worker had reached MMI for those injuries. Worker's motion incorrectly asserted that the October 8, 2014, MMI date was the law of the case, and it confusingly sought to provide Dr. Legant with our legal conclusions regarding the injuries Worker had proven. Nevertheless, the substance of the motion was clear: Worker was seeking to have the IME address only those issues that Worker understood to have been left open by our opinion in his first appeal. The WCJ denied Worker's request, a denial reasonably understood as a refusal to permit Worker to specify those injuries for which Dr. Legant's opinion as to an MMI date was needed. Dr. Legant's IME report consequently contains no mention of Worker's bilateral elbow strain, either in its diagnosis of Worker's accidentally-caused injuries or in its evaluation of Worker's MMI date. The WCJ

nevertheless relied exclusively on that report and on Dr. Pasqualoni's form letter—which also does not mention Worker's bilateral elbow strain—in concluding that Worker had reached MMI for all of his injuries on March 1, 2013. Because the WCJ failed to comply with our mandate in doing so, it erred as a matter of law, and the December 6, 2016, compensation order must be reversed.

**CONCLUSION**

**{26}** We reverse and remand for the sole purpose of determining the date on which Worker's bilateral elbow strain reached MMI. If necessary, the WCJ may take additional evidence to determine that date. If the evidence demonstrates that Worker's elbow injury reached MMI on or before March 1, 2013, the WCJ may again conclude that Worker reached MMI for all of his injuries at that time.

**{27}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**BRIANA H. ZAMORA, Judge**